SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Plaintiff–Appellant,

v.

L.S. YOUNG, Et Al.,
Defendants–Appellees.

No. 89–2181.

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1989.

Spencer F. Robinson, Ramsay, Cox, Bridgforth, Giblert, Harrelson & Sterling, Pine Bluff, Ark., for plaintiff-appellant.

Clinton J. Miller, III, Asst. Gen. Counsel, United Transp. Union, Cleveland, Ohio and J. Donald Bowen, Helm, Pletcher, Hogan, Bowen, Saunders, Houston, Tex., for defendants-appellees.

Before GEE, JONES and SMITH, Circuit Judges.

GEE, Circuit Judge:

### Facts and Disposition Below

This appeal concerns Southern Pacific's attempts to free itself from an imbroglio between warring factions of a union of its workers. The dramatis personae are as follows: Southern Pacific, whose purchase (through a subsidiary) of new trackage sparked this dispute; Eastern Line employees, those workers who operate Southern Pacific Lines east of El Paso; Western Lines employees, their west-of-El Paso colleagues. Both sets of employees are affiliated with the United Transportation Union (UTU), which has acted as honest broker throughout the altercation. The Eastern and Western sets of workers have, however, separate officers and separate collective bargaining agreements with Southern Pacific.

In 1980, a subsidiary of Southern Pacific obtained permission from the Interstate Commerce Commission (ICC) to buy a railway line. The ICC, pursuant to its legislative mandate,[1] awarded protective benefits to the workers affected by the purchase of the line. The benefits, grounded in the ICC decision in New York Dock Ry.–Control–Brooklyn Eastern Dist., 360 ICC 60 (1979), aff'd sub nom. New York Dock Ry. v. United States, 609 F.2d 83 (2d Cir.1979)

1. 49 U.S.C. section 11347.

("*New York Dock II*"), require that affected workers enjoy "implementing agreements" which are either voluntarily negotiated or imposed through arbitration under protective conditions. Southern Pacific did not interpret the ICC order as extending to Eastern Line employees.

After extensive renovation, Southern Pacific began routing traffic onto the line in 1983. The new line apparently shifted what was once Eastern Line traffic to the Western area. Thus, with their settled work assignments upset, Eastern Line workers sought 1) work allocation over the line (this they pursued internally in the UTU under that organization's constitution, which provides a mechanism for resolving intraunion disputes)[2] and 2) protective benefits under *New York Dock II* flowing from the ICC order and on the ground that the new traffic patterns adversely affected their employment with Southern Pacific. The UTU President appointed an International Vice President for the Union to resolve the work allocation dispute. The Eastern Line workers succeeded in their work equity claim. In 1984, the President of the UTU accepted the International Vice President's distribution formula that awarded 58.3% of the work on the line to Eastern Lines people and 41.7% to Western Lines people. The Western Lines people unsuccessfully appealed the President's decision to the Board of Appeals of the Union. In 1985, a neutral arbitrator appointed by the National Mediation Board again favored Eastern Lines workers in their bid for protective benefits, stating that the ICC intended that *New York Dock II* benefits could flow to them. Pursuant to the award, a UTU official negotiated for the benefits with Southern Pacific in the Eastern Lines workers' behalf. When the negotiations reached an impasse, an arbitrator imposed an implementing agreement on Southern Pacific. Western Lines employees were not party to the arbitration be-

tween Southern Pacific and Eastern Lines, although they could have been.

When the UTU, consonant with its decision, demanded assignment of work to Eastern Lines workers, Southern Pacific refused in the absence of the Western Lines workers' agreement. Eastern Lines employees, over the objection of Southern Pacific, then obtained the appointment of a neutral arbitrator pursuant to *New York Dock II* to resolve the crisis. Southern Pacific responded by filing suit to enjoin arbitration on the basis that the implementing agreement imposed on it in 1985 was conclusive arbitration of the *New York Dock II* protections for Eastern Lines employees. The district court, upon UTU Eastern Lines motion, dismissed the suit on the ground that it lacked subject matter jurisdiction. Southern Pacific filed this appeal.

## Discussion

The sole question presented on appeal boils down to a determination of the proper forum, district court or the ICC, to decide the preclusive effect of the arbitration of claims arising out of an ICC order providing protective benefits to workers affected by a railroad acquisition. The question is one of first impression in this Circuit. Southern Pacific contends that it is the district court that decides the res judicata effects of the 1985 arbitration. UTU Eastern Lines seizes upon a theory of the exclusive primary jurisdiction of the ICC to confer upon that body authority to decide whether it may now claim work allocation on the Western Lines. Basing our conclusion on a reading of the case law, on notions of Congressional intent, and on considerations of judicial economy, we hold that UTU Eastern Lines should prevail.

A simple reading of 28 U.S.C. section 2342 indicates that the Court of Appeals has exclusive primary jurisdiction to enjoin any rules, regulations and final orders of the ICC.[3] That statute does not, however,

---

**2.** The workings of Art. 90 of the UTU Constitution are described in *Beardsly v. Chicago & Northwestern Transportation Co.*, 836 F.2d 1493 (8th Cir.), *as modified on rehearing*, 850 F.2d

1255, 1261 (1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1341, 103 L.Ed.2d 810 (1989).

**3.** The relevant portion of 28 U.S.C. section 2342 provides:

speak directly to the issue raised on this appeal, i.e., who decides the res judicata implications of an ICC arbitration. Southern Pacific maintains that because UTU Eastern Lines submitted to arbitration in 1985 and purposely did not include UTU Western Lines in that proceeding when it could have done so, and when it accepted the ensuing award without seeking review before the ICC or the Court of Appeals, UTU Eastern Lines abandoned its right to pursue work allocation. Essentially, the argument runs, UTU Eastern Lines has made its bed and must now lie in it. To do otherwise, Southern Pacific claims, would be to subject Southern Pacific to piecemeal arbitration. Because the question of arbitrability is one for the courts to decide, Southern Pacific concludes, the district court is charged with protecting it against the harassment of multiple arbitration.

Southern Pacific bolsters its claim for district court jurisdiction with a number of Eighth Circuit cases. First, Southern Pacific advances *Sorensen v. Chicago & Northwestern Transportation Co.*, 627 F.2d 136 (8th Cir.1980), which holds that a dispute submitted to final arbitration cannot be the subject of review in the courts. Southern Pacific's point is that, because both it and UTU Eastern Lines accepted the arbitrator's award and because neither sought review through the prescribed channels, the award must now be seen as final, binding and conclusive. Consequently, Southern Pacific contends, the district court is the proper forum to decide the issue of finality. UTU Eastern Lines replies that the conclusion vesting jurisdiction in the district court does not flow from the above facts, that *Sorensen* does not stand for its corollary, i.e., that a district court may enjoin further arbitration through the principles of res judicata. Thus, UTU Eastern Lines maintains that *Sorensen* is misapplied by Southern Pacific and that Southern Pacific is instead bound

to exhaust its administrative remedies by pressing its res judicata claim before the arbitrator appointed under the *New York Dock II* conditions.

*Sorensen* can fairly be read to support either view and so does not illuminate a solution under these facts. The Eighth Circuit in that case faced a far simpler fact pattern than we contemplate today. The parties in *Sorensen* had submitted the entire dispute to an arbitrator, who had rendered an award. No claim remained outstanding, and no employee perfected an appeal. In these circumstances, the Eighth Circuit held that the district court wanted jurisdiction to relitigate the self-same claim that the arbitrator had once fully determined. Consequently, the Court did not confront our task of construing the res judicata effect of an arbitration that covered only part of the employees' claims.

Southern Pacific next submits *Ozark Airlines v. National Mediation Board*, 797 F.2d 557 (8th Cir.1986), for the proposition that it is the business of the courts and not of the ICC (or of its delegate under *New York Dock II*, the arbitrator) to determine the finality of an arbitration award. In *Ozark*, the Eighth Circuit held, relying on the Supreme Court decision of *AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), that the arbitrability of disputes is a question of law to be determined by the courts. As UTU Eastern Lines emphasizes, however, *Ozark* concerned a question arising out of a collective bargaining agreement and sought to construe the reach of the arbitrator's jurisdiction founded on that contractual mandate.

The case at bar hinges on a determination of the jurisdiction of the ICC and its delegate, the arbitrator. Jurisdiction here is thus moored to statutory—not to con-

---

The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of— ... (5) all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title.... *See also* 28 U.S.C. section 2321(a) which states:

Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title.

tractual—authority. UTU Eastern Lines is correct that this statutory mandate poses a critical difference between the *Ozark* type of arbitration and that rendered in the case now before the Court. Indeed, the reasoning in *Machinists v. Republic Airlines*, 829 F.2d 658 (8th Cir.1987), upon which Southern Pacific also relies, underscores this crucial distinction. That case also sprang from an arbitration arising out of the terms of a collective bargaining agreement. In *Machinists*, the Eighth Circuit stated, quoting *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399 (8th Cir.1986), that "[A]ny power that the arbitrator has to resolve the dispute must find its source in a real agreement between the parties. He has no independent source of jurisdiction apart from the consent of the parties." 829 F.2d at 661. The Court went on to quote the Supreme Court in *AT & T*,

> The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced," however, if a labor arbitrator had the "power to determine his own jurisdiction...." Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1509 (1959). Were this the applicable rule, an arbitrator would not be constrained to resolve only those disputes that the parties have agreed in advance to settle by arbitration, but, instead, would be empowered "to impose obligations outside the contract limited only by his understanding and conscience."

475 U.S. at 651, 106 S.Ct. at 1419 (citation omitted).

In the instant case, however, the arbitrator *does* have an independent source of jurisdiction. That jurisdiction does not rest on the intent of the parties (as it did in *Ozark* and was therefore properly held to be within the province of the district court), rather, it flows from the ICC's statutory mandate, enshrined in 49 U.S.C. section 11327, to enforce employee protective conditions. Consequently, as UTU Eastern Lines argues, the ICC and not the district court must determine the res judicata im-

pact of its 1985 arbitration[4] on a question not previously submitted to it.

UTU Eastern Lines submits that *United Transportation Union v. Norfolk and Western Railway*, 822 F.2d 1114 (D.C.Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988), upon which the district court chiefly relied, controls. In *Norfolk*, the D.C.Circuit held that an award made under the *New York Dock II* protective conditions was subject to review by the ICC itself and not the district court, finding that the exclusive mechanism for challenging awards thus rendered was via appeal to the Circuit Courts pursuant to 28 U.S.C. sections 2321(a) and 2342(5). 822 F.2d at 1119–20. Southern Pacific argues that *Norfolk* is limited to holding that the district court lacks jurisdiction in a collateral attack of an ICC order and does not address the question of res judicata effects to be given such orders. We find Southern Pacific's argument unpersuasive, however, because *Norfolk* read the jurisdictional statute[5] broadly to prevent the splitting of claims for relief between the district court and the Court of Appeals. 822 F.2d at 1120. It appears clear that Southern Pacific is here avoiding the bar of a clearly applicable statute "merely by drafting an artfully worded complaint." *Id.* at 1120. Southern Pacific, by presenting the issue as one of res judicata, seeks to shoehorn its claim for relief into a court not intended to hear it. As the district court noted, "[t]he possibility that res judicata may be a defense in UTU Eastern's arbitration proceeding does not give this Court the authority to foreclose a determination on the merits of UTU Eastern's claim." Moreover, *Norfolk* sets out a crisp policy, derived from congressional intent, disfavoring district court involvement at any stage of the proceeding:

> The rationale for statutory review is that coherence and *economy* are best served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is, as we

---

4. Rendered by delegation to an arbitrator under art. 1, section 4(a)(3) of *New York Dock II* conditions.

5. 28 U.S.C. section 2342.

have said, for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the Court of Appeals. The likelihood of duplication and inconsistency would exist in either case.

822 F.2d at 1120 (quoting *City of Rochester v. Bond,* 603 F.2d 927, 936 (D.C.Cir. 1979)) (emphasis added). The goal of judicial economy is further advanced by deferring to the expertise of the arbitrator who is peculiarly competent to unravel complex disputes. This is especially true in cases such as the one at bar, where the decisionmaker must decide whether the same issue has already been resolved in an earlier proceeding. Regarding this "identity of issues" question, the Eighth Circuit Court of Appeals in *Machinists,* quoting from *United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.,* 666 F.2d 806, 811 (3d Cir.1981) stated that:

> [f]ederal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution and when enforcement of an arbitration award or settlement agreement is sought . . ., the court must be able to say "with positive assurance" that the award or settlement was intended to cover the dispute.

829 F.2d at 661.

The fact that a collective bargaining agreement gave rise to the arbitration in *Machinists* and in *Consolidation Coal* does not impair the application of the principle of judicial restraint in this case. That principle applies with equal force to the situation where Congress and not the parties have chosen the appropriate method of dispute resolution. Moreover, the texts of the statutes carving out the jurisdiction of the Court of Appeals fuel the restraint argument. The relevant portions provide in 28 U.S.C. section 2321(a) as follows:

> Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title.

28 U.S.C. section 2342 sets forth the jurisdiction of the Court of Appeals as follows:

> The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part) or to determine the validity of— . . . (5) all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title. . . .

Further, given the admonition in Article III of the United States Constitution that federal courts are courts of limited jurisdiction, we are loath to contradict the natural reading of the above provisions. It seems clear that Congress intended to vest exclusive primary jurisdiction over labor disputes on the railways in the ICC, with the courts of appeals serving as the only avenues of review and relief.

Accordingly, the disposition of the district court is AFFIRMED.