Donald Scott **THOMAS** and Jane
Holt Thomas, Appellants,

v.

**PRUDENTIAL SECURITIES, INC.** and
Prudential–Bache Securities, Inc.,
Appellees.

No. 03–95–00455–CV.

Court of Appeals of Texas,
Austin.

April 24, 1996.

---

Amanda Foote Schmidt, Clark, Thomas & Winters, Austin, for Appellants.

Steven J. Berry, Robert L. Wright, Gardere & Wynne, L.L.P., Charles Herring, Jr., Herring & Associates, Austin, for Appellees.

POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellants Donald Scott Thomas[1] and Jane Holt Thomas challenge the authority of an arbitration panel to award attorney fees and expert witness fees to appellees Prudential Securities and Prudential–Bache Securities, Inc. ("Prudential"). Because we hold that the arbitration panel acted within its authority in awarding these fees we will affirm the district court's judgment.

## BACKGROUND

In February 1990, Donald Thomas met with a representative of Prudential to discuss investment possibilities in a company called LIN Broadcasting. The Thomases ultimately used Prudential's brokerage services to engage in margin and options trading in LIN Broadcasting; they alleged that as a result of these investment transactions they incurred significant losses. They blamed these losses on Prudential, claiming among other things that Prudential engaged in fraud and "preyed" on them by placing them in an investment situation unsuitable for their age and financial acumen. Pursuant to a client agreement with Prudential, the Thomases were required to submit their claims against Prudential to an arbitration panel.

The Thomases sought from Prudential approximately five million dollars in damages, five million dollars in "lost trading opportunity costs," and exemplary damages of approximately thirty million dollars. The Thomases also asked for reasonable and necessary attorney fees and expenses. Prudential vigorously disputed the Thomases' allegations, claiming that the Thomases' acquisition of LIN Broadcasting stock actually resulted in a profit while their accounts were maintained at Prudential. Prudential pointed to Donald Thomas's extensive and successful experience in business matters generally and investments specifically to refute the claim that Prudential took advantage of the Thomases. In addition to denying each of the Thomases' claims on their merits, Prudential asserted that the entire action lacked any factual basis and was brought in bad faith to force a settlement. Prudential sought to recover its attorney and expert witness fees from the Thomases.

Following extensive discovery and a four-day hearing, the arbitration panel dismissed the Thomases' claims. The panel awarded Prudential $80,000 in attorney fees and $16,500 in expert witness fees. The Thomases unsuccessfully sought to vacate the award in district court. On appeal they attack the district court's judgment in four points of error. The first two challenge the authority of the arbitration panel to award attorney and expert witness fees; the third and fourth points address potential arguments that the Thomases waived their complaint on this issue. Because Prudential does not raise the issue of waiver, we consider only whether the

---

1. Although Mr. Thomas died prior to the submission of this case, the certificate of cash deposit filed at the trial court names Mr. Thomas as a party rather than his estate.

arbitration panel acted within its authority in awarding the fees.

## DISCUSSION

Because this transaction involves interstate commerce, the Federal Arbitration Act (the "FAA") governs the issues relating to the arbitration dispute. *See* 9 U.S.C.A. §§ 1–16 (1970); *B.W.I. Cos. v. Beck,* 910 S.W.2d 620, 622 (Tex.App.—Austin 1995, original proceeding). Under section 10(a)(4) of the FAA, this Court may vacate an arbitration award where the arbitrators exceeded their authority in rendering it. 9 U.S.C.A. § 10(a)(4) (1970). The Thomases invoke this provision in attempting to set aside the award, claiming that the arbitration panel had no jurisdiction to assess attorney or expert witness fees.

▆ As the party moving to vacate the arbitration award, the Thomases bear the burden of proving that the panel exceeded its jurisdiction. *See Wall Street Assoc. v. Becker Paribas,* 27 F.3d 845, 848 (2d Cir.1994). The scope of the arbitrator's jurisdiction is determined by the intent of the parties as expressed through the contract containing the arbitration clause and the submission agreement. *See Executone Info. Sys. v. Davis,* 26 F.3d 1314, 1323 (5th Cir.1994); *Southern Pacific Transp. Corp. v. Young,* 890 F.2d 777, 780 (5th Cir.1989). When parties actually submit an issue to the arbitrator, courts additionally look to the scope of the submissions as a reflection of the parties' intent. *See Executone,* 26 F.3d at 1323. In deciding whether the arbitration panel exceeded its jurisdiction, we resolve all doubts in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 213 (5th Cir.), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993).

▆ Before doing business with the Thomases, Prudential required them to sign a client agreement which provided that all disputes between the parties would be resolved through arbitration. In their submission agreement the parties elected to submit their dispute to arbitration under the New York Stock Exchange ("NYSE") rules, which thus became incorporated into the contractual agreement between the parties.

Prudential asserts that the arbitration panel had the authority to award the contested fees because: (1) the arbitration rules themselves provide for such an award; (2) the submission agreement authorized the panel to resolve all claims which may be asserted in the arbitration, and both parties submitted claims for attorney fees; and (3) the Thomases brought this action in bad faith.[2] The Thomases assert that nothing in the parties' agreement provides the panel authority to award attorney or expert witness fees. They further claim that the "American Rule," which requires each side to pay its own legal expenses absent an express statutory or contractual provision to the contrary, applies to the arbitration proceeding.

Prudential contends that NYSE Rule 629(c) explicitly authorizes the arbitration panel to award attorney and expert witness fees. The rule provides in pertinent part:

> In addition to forum fees, the arbitrator(s) may determine in the award the amount of costs incurred pursuant to Rules 617, 619 and 623 and, unless applicable law directs otherwise, other costs and expenses of the parties. The arbitrator(s) shall determine by whom such costs shall be borne.

NYSE Rule 629(c).[3] Prudential claims that "other costs and expenses" include attorney and expert witness fees. As authority for this interpretation Prudential cites *Prudential–Bache Sec., Inc. v. Tanner, et. al.,* 72 F.3d 234 (1st Cir.1995). In *Tanner,* the First Circuit determined that the "other costs and expenses" provision in NYSE Rule 629(c) authorized arbitrators to award attorney fees. *Id.* at 243.

---

**2.** Prudential also argues that numerous statutory bases authorize the fee award in this case. Our resolution of the case does not involve these issues, and we therefore do not reach them.

**3.** Rules 617, 619 and 623 concern adjournment fees, discovery costs, and the cost of transcribing the arbitration record.

The Thomases assert that this Court should not follow *Tanner* for two reasons. First, they urge that a case vacating an arbitrator's award of attorney fees provides better-reasoned authority on this issue. *See Matter of Prudential–Bache Sec. and Depew,* 814 F.Supp. 1081, 1083 (M.D.Fla.1993). In *Depew* the court was asked to interpret American Arbitration Association Rule 43, which authorized "any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties...." The court determined that, by authorizing only those awards "within the scope of the agreement between the parties," the rule limited the scope of the arbitrator's authority to the express terms of the parties' contract. The court accordingly held that because the rule referred back to the contract, the rule itself could not provide authority for the award of attorney fees. *Id.* at 1083. Unlike the rule at issue in *Depew,* Rule 629(c) does not refer back to the parties' original agreement; instead, it serves as a separate contractual provision which authorizes the award of expenses independent of the parties' original agreement. Because of this pivotal distinction we find *Depew's* holding and reasoning inapplicable to this case.

The Thomases point out that numerous NYSE rules concerning assessment of expenses list particular categories of expenses; they claim that attorney fees would be specifically listed as well if the rules allowed an award of such fees. This contention does not persuade us, however, because the language at issue by definition contemplates the award of expenses not enumerated elsewhere in the rules. The position advocated by the Thomases, carried to its logical end, would render the allowance of "other expenses" meaningless because arbitrators could never award expenses which were not specifically mentioned in the rules.

The Thomases cite authority for the proposition that "costs" in relation to lawsuits generally do not include attorney fees, and argue that this characterization should control our interpretation of "other costs and expenses" in Rule 629(c). We disagree. The first case cited, *American Airlines, Inc. v. Swest, Inc.,* 707 S.W.2d 545, 547–48 (Tex.1986), interprets the meaning of "costs" as used in a tariff rule; that rule was incorporated into a contract between the parties. The court observed that the rule concerned costs incurred by reason of tariff rule violations or default by the shipper, but did not refer to prosecution of lawsuits. The court accordingly held that "costs" in this rule did not authorize the recovery of attorney fees. *Id.* at 548. Unlike the provision involved in *American Airlines,* Rule 629(c) necessarily refers to costs and expenses resulting from the prosecution of claims in the arbitration proceedings, and attorney fees make up a large component of such costs and expenses. For this reason we are not persuaded by the Thomases' reliance on *American Airlines.*

The Thomases next cite this Court's holding that "costs" do not include "costs billed to the client as part of the attorney's fee for services provided." *Westech Eng'g v. Clearwater Constructors,* 835 S.W.2d 190, 205–06 (Tex.App.—Austin 1992, no writ). In *Westech,* we interpreted a contractual provision allowing for the recovery of "all costs and attorney fees" arising out of a suit for enforcement of the contract. Citing *Black's Law Dictionary,* we observed that " 'costs' usually refer to '[f]ees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules; e.g., filing and service fees.' " *Id.* at 206. Rule 629(c) specifically provides for the allocation of forum fees, including filing fees; these fees encompass the same type of expenses as litigation "costs." Because Rule 629(c) authorizes the award of costs and expenses "in addition to" these forum fees, "costs" in the litigation context cannot share the same meaning of "costs and expenses" in Rule 629(c). Furthermore, the Thomases cannot rely on *Westech* for the proposition that "costs and expenses" in Rule 629(c) do not include attorney fees. "Costs" in *Westech* could not be read to include attorney fees because the contract provided for the recovery of both costs *and* attorney fees.

■ The Thomases also contend that in light of the "American Rule" requiring litigants to pay their attorney fees absent a statutory or contractual provision to the con-

trary, we should not read into the NYSE rule an implied basis to award attorney fees in the absence of a provision explicitly authorizing such an award. *See Alyeska Pipeline Serv. v. Wilderness Soc'y,* 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1616, 1621, 44 L.Ed.2d 141 (1975) (describing the "American Rule"). But the Thomases have presented no authority holding that the American Rule applies to arbitration proceedings. *See, e.g., Tennessee Dep't of Human Servs. v. United States Dep't of Educ.,* 979 F.2d 1162, 1169 (6th Cir.1992) (refusing to extend "American Rule" to arbitrations). More importantly, the American Rule does not apply where a contractual provision authorizes the award of attorney fees; Rule 629(c) provides an explicit contractual basis for the award of "other costs and expenses."

■ Moreover, as Prudential points out, an exception to the American Rule exists when a litigant brings a suit in bad faith. *See Alyeska Pipeline Serv.,* 421 U.S. at 245, 95 S.Ct. at 1615; *Tanner,* 72 F.3d at 243; *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1064 (9th Cir.1991); *Depew,* 814 F.Supp. at 1083. The Thomases insist that the award cannot stand on this basis because this exception requires a finding of bad faith, and the panel in this case made no such finding. This contention ignores the rule that arbitrators need not specify the basis for their award. *Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 235 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Valentine Sugars,* 981 F.2d at 214. Furthermore, because the Thomases have not provided a transcript of the arbitration proceedings, this Court presumes evidence supporting the panel's award. *See Kline v. O'Quinn,* 874 S.W.2d 776, 783 (Tex.App.— Houston [14th Dist.] 1994, writ denied) (citing *House Grain Co. v. Obst,* 659 S.W.2d 903, 906 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.)). We therefore assume adequate evidence supported a determination that the Thomases brought their cause of action in bad faith. Based on that assumption, the arbitration panel did not exceed its authority in awarding attorney and expert witness fees.

■ We next consider the scope of the submissions to the arbitrators as an indicator of the arbitrators' authority. *See Executone,* 26 F.3d at 1323. Significantly, both parties sought the recovery of attorney fees from the panel, "suggesting that awarding fees was contemplated by the parties to be within the scope of the agreement to arbitrate." *Tanner,* 72 F.3d at 243. The explicit terms of the parties' agreement do not control our analysis here, because "the parties may agree to arbitration of disputes that they were not contractually compelled to submit to arbitration." *Executone,* 26 F.3d at 1323. We conclude that both parties' claims for attorney fees reflect their unified intention to authorize the panel's award of attorney fees.

## CONCLUSION

Following the reasoning and holding of *Tanner,* we conclude that the parties' submission of the attorney fees issue, combined with the authority to award costs and expenses under Rule 629(c) and the presumed evidence of bad faith on the Thomases' part, provide ample support for the panel's award of attorney and expert witness fees in this case. *Tanner,* 72 F.3d at 243. Because we resolve all doubts in favor of arbitration, we hold that the Thomases failed to carry their burden of showing that the panel acted outside the scope of its authority in awarding attorney and expert witness fees. *See Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941; *Wall Street Assoc.,* 27 F.3d at 848.

The judgment of the trial court is affirmed.