Peacock et ux v. Wave Tec Pools Inc.















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-073-CV

     DANNY HOWARD PEACOCK
     AND KARON GAYOSO PEACOCK,
                                                                         Appellants
     v.

     WAVE TEC POOLS, INC.,
                                                                         Appellee
 

From the County Court at Law No. 2
Brazos County, Texas
Trial Court # 49-838-CCL-2
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                
      Unhappy with an arbitration award, Peacock filed a petition in the trial court to modify or
vacate it. The trial court confirmed the award. Peacock appeals the judgment and contends: 1)
that the trial court erred in refusing to vacate the arbitration award as void (a) for want of finality,
and (b) for going beyond the scope of the arbitration agreement; 2) that the trial court (a) used the
wrong standard of review, and (b) should have vacated the award for misconduct by the arbitrator;
and 3) that the trial court abused its discretion in denying a motion for new trial on the basis of
newly-discovered evidence. We sustain issue 1(b) in part, reverse the trial court in part, and
render judgment that a portion of the arbitration award be vacated.
I. Background
      Danny and Karon Peacock entered a written contract with Wave Tec Pools for Wave Tec to
build a swimming pool and spa on the Peacock’s land. The construction contract contained an
arbitration clause. The Peacocks were not satisfied with the construction. In the process of
attempting to resolve the problem, the Peacocks and their attorney, and Wave Tec and its
representative, signed an “Agreement to Arbitrate.” The Agreement to Arbitrate specified that
the Better Business Bureau’s rules of arbitration would control in the matter. Under “Nature of
Dispute,” the Peacocks stated that the pool installed at their home is defective and the
workmanship substandard. The agreement further lays out the “Decision Sought” as “new pool,
or reimbursement of amounts paid, payment by Wave Tec of amount necessary to complete and
repair pool.” It is noted in the agreement that the arbitrator’s decision “may not exceed what is
set out in the ‘Decision Sought’ section of the Agreement.” Typed in the section labeled
“Consumer Wants” is: “as stated above in Decision Sought.” Nothing is typed in the section
labeled “Business Wants.” The BBB rules warn parties that they “should contact the BBB at once
if [they] disagree with the general description of [their] case and/or the decision [they] are
seeking” as found in the Agreement to Arbitrate.
      After a hearing, the arbitrator rendered a decision requiring Wave Tec to repair the pool,
subject to Peacock’s approval. If Peacock does not approve of the repairs, then the arbitrator will
engage an expert to inspect the repairs. In addition, Peacock was ordered to pay Wave Tec over
$10,500, in addition to the contract price, for rock removal. In an addendum to the arbitration
decision, the arbitrator explained that this money was due Wave Tec because the construction
contract provided for additional money to be paid in cases of “unforeseen circumstances.”
      Peacock refused to accept this arbitration award. He filed a petition to “Modify, Correct or
Vacate Arbitration Award and Petition for Declaratory Judgment” in the trial court. The trial
court confirmed the award and ordered that Peacock pay attorney’s fees for the declaratory
judgment portion of his suit. We now consider his three issues on appeal.
II. Arbitration Awards—the Legal Standard
      Texas public policy strongly favors the submission of disputes to arbitration. In re Conseco
Fin. Servicing Corp., 19 S.W.3d 562, 566 (Tex. App.—Waco 2000, no pet.). Judicial review of
arbitration awards is very deferential. Prudential Secs., Inc. v. Shoemaker, 981 S.W.2d 791, 793
(Tex. App.—Houston [1st Dist.] 1998, no pet.). The reviewing court resolves all doubts in favor
of the arbitrator when reviewing whether the award falls within the scope of the arbitrator’s
authority. Id. Arbitration awards are favored by the courts to dispose of pending disputes, and
therefore every reasonable presumption will be indulged to uphold the arbitration proceeding. J.J.
Gregory Gourmet Servs. v. Antone’s Import Co., 927 S.W.2d 31, 33 (Tex. App.—Houston [1st
Dist.] 1995, no writ).
      But no matter how much arbitration is to be favored by the courts, or how deferential our
review of arbitration awards is to be, arbitration agreements are still creatures of contract and must
be analyzed as such. In resolving disputes regarding the interpretation of arbitration agreements,
standard contract construction principles are used. Leander Cut Stone Co. v. Brazos Masonry,
Inc., 987 S.W.2d 638, 640 (Tex. App.—Waco 1999, no pet.). The plain meaning of the
contractual language should be looked at in order to ascertain the intent of the parties. Id. We
will use these principles in our analysis.
      Under Texas law, arbitrations may be conducted in accordance with the common law or
chapter 171 of the Civil Practice and Remedies Code. See Riha v. Smulcer, 843 S.W.2d 289, 292
(Tex. App.—Houston [14th Dist.] 1992, writ denied); Tex. Civ. Prac. & Rem. Code Ann. §§
171.001-.098 (Vernon Supp. 2002). The trial court concluded that, in this case, the arbitration
did not fall under chapter 171, but rather, was controlled by common law principles. The parties
do not dispute this. Under the common law, if an award is “within the authority conferred on the
arbitrators in the agreement, the award will not be set aside except for fraud, misconduct, or such
gross mistake as would imply bad faith or failure to exercise an honest judgment.” Smith v.
Barnett, 373 S.W.2d 762, 765 (Tex. Civ. App.—Dallas 1963, no writ).
III. Validity of Arbitration Award
      In his first issue, Peacock complains that the trial court erred in refusing to vacate the
arbitration award. First, he argues that the arbitration award is void because of its lack of finality. 
Second, Peacock complains that the arbitration award is void because it goes beyond the scope of
the arbitration agreement. We must consider the impact of the term “void.”
a. Void versus voidable
      An arbitration award is in the nature of a judgment. Hooker v. Williamson, 60 Tex. 524,
1883 WL 3509, at *1 (Tex. 1883). Therefore, we must be careful of labels such as “void” and
“voidable” because they are terms that have specific meaning as regards judgments. A void
judgment is an absolute nullity and has no legal force or effect, while a voidable judgment is
capable of being voided or confirmed. See In re Sensitive Care, Inc., 28 S.W.3d 35, 39 (Tex.
App.—Ft. Worth 2000, no pet.); Easterline v. Bean, 49 S.W.2d 427, 429 (Tex. 1932). A
judgment is void when the court had no jurisdiction to issue it. Browning v. Placke, 698 S.W.2d
362, 363 (Tex. 1985). Other defects merely render the judgment voidable. Id. These concepts
can be applied to the issues before us.
b. Finality of the Award
      Peacock contends that the fact that the arbitrator ordered Wave Tec to repair the pool, rather
than pay Peacock for repairs, creates an award that is not final because it requires further action
on the part of Wave Tec. Indeed, the arbitrator labeled the award “interim,” established the
procedure to be followed, and retained the authority to engage an expert to inspect the repairs if
Peacock did not approve them. Peacock argues that this lack of finality renders the award void. 
As we understand Peacock’s argument, it is that, because the arbitration award is not final, the
trial court does not have jurisdiction to confirm it. If the trial court did not have jurisdiction to
confirm the award, the judgment would, in fact, be void. Thus, we must determine whether the
arbitration award here is final—and therefore subject to confirmation—even though it orders Wave
Tec to repair the pool.
      Texas case law requires that an “award must determine all matters submitted or it will be
unenforceable for lack of finality.” Porter v. Irvine, 658 S.W.2d 711, 713-14 (Tex.
App.—Houston [1st Dist.] 1983, no writ) (citing Smith v. Barnett, 373 S.W.2d 762, 765 (Tex.
Civ. App.—Dallas 1963, no writ)). Further, while the award may not “reserve judicial authority
to be exercised in the future, . . . under certain circumstances [the arbitrator] may reserve a
ministerial authority to be thereafter exercised without vitiating the award.” Hooker, 1883 WL
3509, at *2.
      In this case, the BBB Rules of Binding Arbitration, which were incorporated into the
Agreement to Arbitrate and controlled the proceeding, allow for an arbitrator to render either a
“final or an interim decision.” An interim decision is appropriate when the “decision requires
some action to be taken. If the arbitrator renders an interim decision, the arbitrator maintains
continuing authority over the execution of the decision in accordance with the specific terms set
out in the decision.” Here, the dispute concerned the defectiveness and substandard workmanship
of Peacock’s pool. The award was repair of the pool with Peacock’s approval. If Peacock did not
approve, the arbitrator reserved the authority to engage an expert to inspect the repairs. This
award determines all matters that were in dispute between the parties regarding construction of the
pool, and which were submitted for resolution under the terms of the Agreement to Arbitrate. In
addition, the authority the arbitrator reserved, that of engaging an expert to inspect the repairs if
Peacock did not approve of those repairs, was ministerial in nature, not judicial. We hold that this
arbitration award does not lack finality.
      We note, however, that there is a distinction between the finality of an arbitration award and
the finality of a judgment confirming such an award. For instance, the res judicata effect of a
judgment confirming an award that contemplates future acts, would not reach those future acts. 
In this instance, we will not comment on the prospective portions of the arbitration award because
the propriety of the award as it may impact or be impacted by future events would be advisory. 
We cannot render advisory opinions. Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211,
223 (Tex. 2002) (citing Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex.
1993)).
c. Scope of the Award
      Second, Peacock complains that the arbitration award is void and should be vacated because
it goes beyond the scope of the arbitration agreement. He contends that the award exceeds the
scope of the agreement because 1) specific performance was awarded rather than the monetary
damages that he requested, and 2) Wave Tec was awarded additional money for rock removal,
which was not included in the Agreement to Arbitrate. Wave Tec points to the original
construction contract signed by the parties as the source that allows the arbitrator to award it
money for services rendered under “unforeseen circumstances.” We must consider an arbitrator’s
scope of authority and its subsequent effect on the validity of an arbitration award.
      To begin, we must determine what defines the scope of the arbitration agreement. The trial
court concluded as a matter of law that the construction contract signed by the parties contains a
binding common law agreement to arbitrate. The trial court further concluded that the scope of
the arbitration award and the scope of the arbitrator’s authority, in this case, are defined by the
“contract.” The trial court appears to conclude that this “contract” is the original construction
contract, incorporated into the parties’ Agreement to Arbitrate. In support of this, Wave Tec
relies upon Thomas v. Prudential Securities. 921 S.W.2d 847 (Tex. App.—Austin 1996, no writ). 
In Thomas, the court considered whether an arbitration panel was acting within its scope of
authority when it awarded attorney and expert witness fees. Id. at 848-49. In order to determine
the scope of the arbitrator’s authority, the court looked at the “intent of the parties as expressed
through the contract containing the arbitration clause and the submission agreement.” Id. at 849. 
The submission agreement in that case would be equivalent to the Agreement to Arbitrate in the
case before us. The court of appeals in Thomas emphasized that when the parties submit an issue
to an arbitrator, the court should look additionally to the “scope of the submissions as a reflection
of the parties’ intent.” Id. The court concluded that the award in that case was within the scope
of the arbitrator’s authority because the arbitration submission agreement between the parties
incorporated the New York Stock Exchange rules, which allowed the award of such fees, and
because both parties had submitted claims for attorney’s fees. The court rejected the appellant’s
argument that the lack of a provision providing for the award of attorney or expert witness fees
in the parties’ original contract controlled the case. Rather than standing for the proposition that
the scope of an arbitrator’s authority is defined by the arbitration clause in the original contract,
as Wave Tec urges, Thomas supports the proposition that the agreement to arbitrate, or submission
agreement as it is termed in Thomas, shapes the scope of the arbitrator’s authority.
      Similarly, in this case, by looking at the plain meaning of the language in the Agreement to
Arbitrate, we see that the Agreement explicitly incorporates the BBB rules of arbitration. The
BBB rules specifically delineate the arbitrator’s authority as “limited to the scope of the Agreement
to Arbitrate.” (Emphasis in original). And the Agreement to Arbitrate specifically sets forth the
nature of the dispute as the allegedly substandard workmanship of the pool. The only mention of
the original construction contract in the Agreement to Arbitrate is Wave Tec’s contention that the
“pool has been installed within specifications and according to contract between consumer and
business.” We hold that, in this case, the scope of the arbitrator’s authority, and, therefore, the
scope of the award, is defined by the Agreement to Arbitrate. We now look to see if (a) the
ordered repair of the pool and (b) the payment for rock removal, fall within the scope of the
arbitrator’s authority as defined by the Agreement to Arbitrate.
      In the Agreement to Arbitrate, Peacock specifies that he wants a “new pool, or reimbursement
of amounts paid, payment by Wave Tec of amount necessary to complete and repair pool.” Texas
case law tells us that “in the absence of clearly restrictive language, great latitude must be allowed
in fashioning the appropriate remedy constituting the arbitrator’s ‘decision.’” J.J. Gregory
Gourmet Servs., Inc. v. Antone’s Import Co., 927 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.]
1995, no writ) (citation omitted). Peacock argues that repairs should not have been awarded in
this case because specific performance is disfavored by courts and “will never be granted where
a complete, speedy, and adequate remedy at law is available.” He cites to extensive case law to
bolster this contention. Peacock fails to realize that the distinction is that the arbitration to which
he submitted was not in a court of law.
      In this case, the BBB rules specify that repairs can be ordered as part of an award. And, in
a transcript of the arbitration meeting that was attached to the trial court’s judgment, the arbitrator
made clear to Peacock the effect of the word “repair” in Peacock’s “Decision sought.” Peacock
was offered an opportunity to amend his statement of the “Decision sought.” The arbitrator stated
to Peacock that the arbitrator could order “a repair under whatever conditions I set forth . . . if
you leave the repair in there.” Peacock chose to leave “repair” in his “Decision sought.” We
conclude that ordering Wave Tec to repair the pool at its own expense is within the scope of this
Agreement to Arbitrate.
      However, as previously stated, the dispute being decided under the Agreement to Arbitrate
was Peacock’s allegation that the pool installed at his home is defective and the workmanship
substandard. Wave Tec argues that the language “according to contract between consumer and
business” is sufficient to incorporate its claim for additional compensation for rock removal into
the arbitration. We disagree. Accordingly, because the arbitrator’s authority is limited to the
scope of the Agreement to Arbitrate, and, because Wave Tec did not contend the decision sought
was incomplete because it did not seek additional payment for rock removal allegedly owed by
Peacock under “Business wants” on the agreement, the arbitrator’s award for rock removal did
exceed the scope of the Agreement to Arbitrate. 
      The Texas Supreme Court tells us that “when arbitrators attempt to determine matters not
submitted to their determination, as to such matters the award is void.” Gulf Oil Corp. v. Guidry,
327 S.W.2d 406, 408 (Tex. 1959). But, that is not to say that if part of the award exceeds the
authority of the arbitrator the entire award is void. “[T]he award will not be set aside if the excess
may be disregarded and a valid award left standing, or if the excess may be regarded as mere
surplusage.” Smith v. Barnett, 373 S.W.2d 762, 765 (Tex. Civ. App.—Dallas 1963, no writ)
(citing Guidry, 327 S.W.2d 406). We therefore sustain part of Peacock’s first issue and vacate
that portion of the arbitrator’s award ordering Peacock to pay additional money for rock removal. 
IV. Misconduct by Arbitrator
      In his second issue, Peacock argues that the trial court applied the wrong standard of review
in deciding whether to vacate the arbitration award. In a letter to counsel sent after the hearing,
the trial court wrote that it was limited to “active bad faith” in considering whether to vacate the
common law arbitration award. But, in its amended findings of fact and conclusions of law, the
trial court addressed several common law grounds for vacation of arbitration awards. Included
in these is “misconduct,” the ground asserted by Peacock as requiring this award be vacated. The
trial court concluded as a matter of law that there was no evidence of misconduct. We review the
trial court’s conclusions of law de novo as legal questions. Hitzelberger v. Samedan Oil Corp.,
948 S.W.2d 497, 503 (Tex. App.—Waco 1997, writ denied). But even an incorrect conclusion
of law will not prevent affirmance of the judgment if the controlling findings of fact support a legal
theory on which the judgment is correct. Id.
      Peacock asserts that the arbitrator solicited advice from technical experts without including
the parties. He argues that this testimony influenced the arbitrator in his award of specific
performance and therefore deprived the parties of a fair hearing. In a document titled “Reasons
for Decision,” which is dated the same as the arbitrator’s decision, the arbitrator explains that:
I have spoken to two individuals with considerable experience in building pools—one of
whom specializes in constructing vinyl-lined pools. Both tell me these pockets, waves
and bumps are evidence that the Pool-Krete foundation is too thin and too uneven to
provide an adequate base for the liner. They also tell me that the presence of sharp
particles which can be felt through the liner indicate that the foundation has not been
adequately “stoned” to remove fine particles of rock. Failure to provide a smooth
foundation will cause the liner to wear excessively. The presence of sharp particles
greatly increase the risk of puncturing the liner. 
      The BBB rules comment on such “technical experts.” The rules state that if such an impartial
technical expert is used by the arbitrator before the decision is made, the parties “will have an
opportunity to evaluate and comment on the qualifications and findings of the expert.” Wave Tec
fallaciously argues to this Court that the BBB rules specifically allow such ex parte testimony from
an impartial expert. Wave Tec points to a provision in the BBB rules that concerns the use of
impartial technical experts after an interim decision has been made. This provision contemplates
the use of impartial technical experts to decide whether the action ordered in the interim decision
was not performed or was performed unsatisfactorily. This is not the case before us. The
technical experts relied upon by the arbitrator did provide input into the decision made by the
arbitrator. The question remains whether this variance from the BBB rules constitutes misconduct
of the arbitrator such as would require vacation of the arbitration award.
      Texas courts have held that to “constitute ‘misconduct’ justifying vacation of an arbitration
award under Texas common law, an act must so affect the rights of a party as to deprive it of a
fair hearing.” IPCO-G.& C. v. A.B. Chance Co., 65 S.W.3d 252, 258 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied) (citing Mullinax, Wells, Baab & Cloutman, P.C. v. Sage, 692 S.W.2d
533, 536 (Tex. App.—Dallas 1985, writ ref’d n.r.e.). The courts have further held that receiving
ex parte affidavit testimony, or having ex parte contact with counsel does not constitute
misconduct justifying the vacation of an arbitration award. Id.
      The evidence considered here by the arbitrator favored Peacock because it supports the
premise that the pool was defective and the workmanship substandard. There is nothing in the
record to indicate that the evidence went to whether Wave Tec should be assigned the repairs. 
This is the issue that Peacock disputes, not whether the pool is defective and not whether the pool
is capable of repair. Indeed, part of Peacock’s decision sought in the Agreement to Arbitrate is
the “amount necessary to complete and repair [the] pool.” We hold that the use of the technical
experts did not so affect the rights of the parties as to deprive them of a fair hearing and therefore
was not “misconduct” by the arbitrator.
V. Motion for New Trial
      In his third issue, Peacock complains that the trial court abused its discretion in denying a
motion for new trial on the basis of newly-discovered evidence. A party seeking a new trial on
the ground of newly-discovered evidence must show the trial court that: 1) the evidence has come
to his knowledge since the trial; 2) it was not owing to the want of due diligence that it did not
come sooner; 3) it is not cumulative; and 4) it is so material that it would probably produce a
different result if a new trial were granted. Burleson State Bank v. Plunkett, 27 S.W.3d 605, 621
(Tex. App.—Waco 2000, pet. denied). Further, in considering whether the trial court abused its
discretion, the inquiry on appeal is not whether it might have been proper for the trial court to
grant the new trial, but rather, whether the refusal to do so has violated a clear legal right or is
a manifest abuse of judicial discretion. Id.
      Peacock asserts that the two newly-discovered facts that 1) Wave Tec was not a member of
the BBB during the trial court’s hearing, and that 2) Wave Tec moved its corporate offices to
another county, require a new trial. Peacock argued in his motion for new trial that if the trial
court had known that neither the trial court, nor the BBB has any jurisdiction or authority to
require Wave Tec to comply with the specific performance as ordered in the arbitration award,
the trial court would have refused to allow the award to stand. The trial court did not agree. 
Further, the record contains a letter from the BBB explaining that Wave Tec’s obligation to the
BBB for dispute resolution regarding this matter continues despite the fact that Wave Tec is no
longer a member. We hold that the trial court did not abuse its discretion in denying Peacock’s
request for a new trial because the newly-discovered evidence was not so material as to probably
produce a different result in a new trial.
VI. Conclusion
      In sum, because we conclude that an award of additional money to be paid for rock removal
was outside the scope of the Agreement to Arbitrate, we reverse the trial court’s judgment in part
and render judgment that that portion of the arbitration award be vacated. As otherwise described
herein, judgment confirming the arbitration award is affirmed.
 
                                                                   TOM GRAY
                                                                   Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Reversed in part and judgment rendered
Opinion delivered and filed January 15, 2003
[CV06]