William H. SMITH et ux., Appellants,

v.

Robert H. BARNETT, Appellee.

No. 16259.

Court of Civil Appeals of Texas.

Dallas.

Dec. 13, 1963.

Biggers, Baker, Lloyd & Carver and Monty C. Barber, Dallas, for appellants.

Frank G. Newman and Gerald C. Galbraith, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Robert H. Barnett, a building contractor, sued appellants William H. Smith and wife to enforce an arbitration award of $33,157.00; and in the alternative, should the award be held to be invalid, for judgment for $36,166.69, the latter figure being the total cost of the construction of a house, including $32,150.00, the contract price, and $4,016.69 for extras.

In addition to their answer appellants filed a cross-action for $15,000.00 for damages for defects in material and workmanship in the construction of the house.

The trial court rendered summary judgment in favor of appellee, sustaining the arbitration award in the amount of $33,157.00.

## THE CONSTRUCTION CONTRACT

On August 5, 1961 the parties entered into a written contract for the construction by appellee of a house for appellants on premises now known as 4707 Crooked Lane in the City of Dallas, Texas.

Appellants had been unsuccessful in their efforts to buy a house located at 4623 Allencrest Street. Upon investigation they found that this house had been constructed by appellee. So they employed appellee to build a similar house for them at 4707 Crooked Lane. The contract with blank spaces filled in by typewriter was prepared on a printed form issued by The American Institute of Architects known as "AIA Short Form for Small Construction Contracts."

In two separate places the contract provides that the house shall be a duplication of 4623 Allencrest with additions and exceptions as noted. In one place the phrase "exact duplication" is used. The contract provides further that "both workmanship and materials shall be of good quality" and "All workmen and sub-contractors shall be skilled in their trades."

## THE ARBITRATION AGREEMENT

Appellants moved into their new house before construction was completed. A controversy arose. To settle their controversy the parties entered into a written arbitration agreement. The arbitrators selected were Thomas L. Magner, a building contractor, and La Vere Brooks, an architect.

The arbitration agreement conferred broad powers on the arbitrators. It reads that the parties agree "to submit all manner of causes of action, controversies, differences, claims, demands and matters whatsoever now pending, existing, held by and between us, relating to or growing out of said contract dated August 5, 1961, by and between Owner and Contractor, and performance thereunder to Tom Magner and La Vere Brooks, as arbitrators * * *."

The arbitration agreement further provides that the arbitrators shall arbitrate and make an award as to whether Contractor breached his contract by failing to perform according to the standard of skill and ex-

cellence practiced in Dallas County, Texas, whether he failed to provide the quality of materials as called for in the plans and specifications relating to the contract of August 5, 1961, and if so what amount of damages Contractor owed Owner by reason of said breaches. But in connection with the standard above referred to the agreement goes on to say that the arbitrators "are to take cognizance, however, of that provision of the contract between Robert H. Barnett and William H. Smith for the construction of the subject house, wherein the house to be built for William H. Smith was to be a duplication of a house built at 4623 Allencrest by the same builder, Robert H. Barnett, with additions and refinements as agreed on."

The agreement also provides that in determining damages the arbitrators should give a breakdown of the damages by assigning to each item of substandard work the reasonable cost of correction. However, the agreement expressly states that such breakdown is required for the purpose of Contractor's seeking recourse against his subcontractors for the damages resulting from substandard work.

The arbitrators were furnished a copy of the arbitration agreement, a lengthy list of the complaints made by appellants, and on at least two occasions inspected both the house at 4707 Crooked Lane and the house at 4623 Allencrest Street.

## THE AWARD

The arbitrators in their award presented a summation of their findings and conclusions as follows:

| | | |
|---|---|---:|
| "Original Contract | | $32,150.00 |
| 'Extra' Costs Allowed | | 4,369.50 |
| | | $36,519.50 |
| *Less: Damage Awards to Owner | | 3,362.50* |
| | | $33,157.00 |
| *Includes— | | |
| (a) Air Conditioning Allowance | | |
| (Owner to pay Gas Company) | | $1865.00 |
| (b) Insulation Allowance | | |
| (Owner to pay Tex. Ins. Co.) | | 280.00 |
| (c) Kitchen-Den Ceiling | | 57.50 |
| (d) Building Permit (Owner paid) | | 60.00 |
| (e) Adjustment for quality of material and workmanship | | 1000.00 |
| (f) Service Warranty (1 year) | | 100.00 |
| | | $3362.50* |

Note: The alleged 'promotion credit' $300.00 is, in our considered opinion, an item to be handled by owner direct with Jim Barnes of Barnes Lumber Co."

———◆———

The allowance of " 'Extra' Costs Allowed" as above set out was supported by a list of 66 items totaling $4,369.50, with the amount of the allowance after each item.

As will be seen, the allowance of "Damage Awards to Owner" as above set out includes an allowance of $1,000.00 in adjustment for quality of materials and workmanship. This allowance of $1,000.00 is in turn broken down in another part of the award into an itemized list of 23 items.

## OPINION

Appellants present four points on appeal. They allege the trial court erred in grant-

ing summary judgment for these reasons: (1) genuine issues of material fact existed as to the validity of the arbitration award; (2) the arbitration award decided matters in excess of the authority given the arbitrators, therefore was void; (3) the award did not determine all matters submitted to the arbitrators, therefore lacked finality, and was void; and (4) alternatively, if not void under Point No. (2), the award contained surplusage matter as a recovery to appellee, therefore the award is void.

We see no merit in any of the above points, but before discussing them in detail we shall review the established legal principles which we consider are controlling in this case.

█ In the absence of a reservation in the arbitration agreement of a right of appeal, the arbitrators' decision is final. If the award is within the authority conferred on the arbitrators in the agreement, the award will not be set aside except for fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment. Haddad v. Bagwell, Tex.Civ.App., 317 S.W.2d 781, 784; Couey v. Arrow Coach Lines, Tex. Civ.App., 288 S.W.2d 192, 196; Galveston, H. & S. A. Ry. Co. v. Henry & Dilley, 65 Tex. 685. Mere errors of fact or law are not grounds for setting aside an award. Johnson v. American Can Co., Tex.Civ. App., 361 S.W.2d 451; Grand International Brotherhood of Locomotive Engineers v. Wilson, Tex.Civ.App., 341 S.W. 2d 206; Johnson v. Korn, Tex.Civ.App., 117 S.W.2d 514. Even though the arbitrators exceed their authority the award will not be set aside if the excess may be disregarded and a valid award left standing, or if the excess may be regarded as mere surplusage. Gulf Oil Corporation v. Guidry, 160 Tex. 139, 327 S.W.2d 406; Knutson v. Brazoria County, Tex.Civ.App., 170 S.W.2d 843; Ferguson v. Ferguson, Tex.Civ.App., 93 S.W.2d 513; Fortune v. Killebrew, 86 Tex. 172, 23 S.W. 976; Shultz & Bro. v. Lempert, 55 Tex. 273. An award must determine all the matters submitted under the terms of the arbitration, otherwise it will be bad for want of finality. The above holdings are discussed in 6 Tex.Jur.2d 73, 78, 86, 87–91, 95.

Appellants in their pleadings allege that the arbitrators made "gross and palpable mistakes, accidents and errors." They do not allege that the arbitrators acted in bad faith or that they failed to exercise honest judgment.

█ In connection with their first and third points on appeal appellants charge that the arbitrators failed to give a breakdown of damages as they were directed to do in the agreement; and that the award is incomplete because the arbitrators failed to consider all of appellants' complaints. There is no merit in these claims. The arbitrators did give a breakdown or an itemized list of claims allowed. The submission agreement does not stipulate that the arbitrators must comment on each item disallowed by them. Both administrators testified by deposition to the effect that they were furnished a list of complaints by appellants and a reply by appellee and that they considered all of the items listed. There is no evidence to the contrary. Moreover, the arbitration agreement expressly states that the stipulation about the detailed breakdown of items is for the purpose of enabling appellee to recover his losses from his subcontractors. It was not put in the agreement for the benefit of appellants.

█ Appellants also claim that the arbitrators based their award wholly upon the standard appellee practiced in building the similar residence at 4623 Allencrest Street instead of the standard practiced by contractors in Dallas, Texas. There is no merit in this claim. It must be borne in mind that in this very connection the arbitrators were directed to take cognizance of the contractual provision that the house at 4707 Crooked Lane should be an exact duplication of the house at 4623 Allencrest, with changes as noted. There is no evidence that the Crooked Lane house was not

built according to the standards practiced in the City of Dallas. We find no evidence that the arbitrators based their award wholly upon the standard of practice followed in constructing the house on Allencrest. But if they did it would not follow that they made a mistake, for there is no evidence that the Allencrest house is not constructed according to the standard practiced in Dallas.

Space will not permit of our discussing each of the mistakes alleged to have been made by the arbitrators. If they were mistakes (we do not say they were) they are not of such a nature as to vitiate the award. For example, appellants object to an allowance of $15.00 for regrouting brick floors. Appellants say this is not sufficient because they paid $40.00 for rewaxing the floors. Appellants' first and third points are overruled.

Under their second point on appeal appellants contend that the arbitrators exceeded their authority in three particulars: (1) in providing that interest under the mechanic's lien should run until the closing date; (2) in providing that the owner should pay the gas company for the air conditioning; and (3) in providing that the owner should pay the company which did the insulation.

■ Again we must hold that there is no merit to appellants' claims. At the time the arbitrators made their award on April 20, 1962 the mechanic's lien obligation in the amount of $32,150.00 executed by appellants was unpaid. Subsequently on August 31, 1962 appellants paid the mechanic's lien, thus stopping the running of interest on that obligation. Yet at the closing interest was mistakenly computed on the whole award of $33,157.00 at the mechanic's lien rate, whereas the said interest should have been charged only on the amount of the mechanic's lien, $32,150.00. Appellee admits that interest was erroneously charged on $1,007.00, the difference between the amount of the mechanic's lien and the amount of the award. The judgment should be modified accordingly.

The mistake in computing the interest was not the arbitrators' mistake. Their comment merely followed the terms of the mechanic's lien contract without change. They did not compute the interest, for the mechanic's lien had not been paid when they made the award. In our opinion they did not exceed their authority. But even if we were to hold that their comment was unauthorized it could be disregarded as mere surplusage, and the remainder of the award left standing.

■ As to the $1,865.00 allowance for air conditioning, the original contract called for appellee to install air conditioning for $1,865.00. Appellants wanted another kind of air conditioning than that called for in the contract. So they made their own contract with the gas company for an amount in excess of $1,865.00. The arbitrators made an allowance in favor of appellants for the $1,865.00 provided in their contract with appellee. Appellants were obligated then to pay the gas company the full amount of their separate contract with the gas company to which contract appellee was not a party.

A similar situation developed with reference to the insulation contract. Appellants made their own agreement with Texas Insulation Company, to which agreement appellee was not a party. The same is true of the promotion credit of $300.00 with Barnes Lumber Company.

Appellants' second point is overruled.

Appellants' fourth point, alleged alternatively, is also without merit except insofar as it asks that the judgment be reformed to credit appellants with the excessive interest charged. The judgment should be so reformed. Otherwise appellants' fourth point is overruled.

The judgment of the trial court is reformed to the extent of allowing appellants a credit of the interest charged on $1,007.00, the last named amount being the difference between the amount of the mechanic's lien contract and the amount of the award.

The judgment as above reformed is affirmed. The costs of appeal will be taxed one-third against appellee and two-thirds against appellants.

Reformed and affirmed.