**Danny Howard PEACOCK and Karon Gayoso Peacock, Appellants,**

v.

**WAVE TEC POOLS, INC., Appellee.**

**No. 10–01–073–CV.**

Court of Appeals of Texas, Waco.

Jan. 15, 2003.

Opinion Overruling Rehearing April 30, 2003.

---

Dick Clark, Craig Enos, Clark, Clark & Howell, L.L.P., Waco, for Appellant.

Christopher W. Peterson, Law Office of Christopher W. Peterson, College Station, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Unhappy with an arbitration award, Peacock filed a petition in the trial court to

modify or vacate it. The trial court confirmed the award. Peacock appeals the judgment and contends: 1) that the trial court erred in refusing to vacate the arbitration award as void (a) for want of finality, and (b) for going beyond the scope of the arbitration agreement; 2) that the trial court (a) used the wrong standard of review, and (b) should have vacated the award for misconduct by the arbitrator; and 3) that the trial court abused its discretion in denying a motion for new trial on the basis of newly-discovered evidence. We sustain issue 1(b) in part, reverse the trial court in part, and render judgment that a portion of the arbitration award be vacated.

## I. Background

Danny and Karon Peacock entered a written contract with Wave Tec Pools for Wave Tec to build a swimming pool and spa on the Peacock's land. The construction contract contained an arbitration clause. The Peacocks were not satisfied with the construction. In the process of attempting to resolve the problem, the Peacocks and their attorney, and Wave Tec and its representative, signed an "Agreement to Arbitrate." The Agreement to Arbitrate specified that the Better Business Bureau's rules of arbitration would control in the matter. Under "Nature of Dispute," the Peacocks stated that the pool installed at their home is defective and the workmanship substandard. The agreement further lays out the "Decision Sought" as "new pool, or reimbursement of amounts paid, payment by Wave Tec of amount necessary to complete and repair pool." It is noted in the agreement that the arbitrator's decision "may not exceed what is set out in the 'Decision Sought' section of the Agreement." Typed in the section labeled "Consumer Wants" is: "as stated above in Decision Sought." Nothing is typed in the section labeled "Business Wants." The BBB rules warn parties that they "should contact the BBB at once if [they] disagree with the general description of [their] case and/or the decision [they] are seeking" as found in the Agreement to Arbitrate.

After a hearing, the arbitrator rendered a decision requiring Wave Tec to repair the pool, subject to Peacock's approval. If Peacock does not approve of the repairs, then the arbitrator will engage an expert to inspect the repairs. In addition, Peacock was ordered to pay Wave Tec over $10,500, in addition to the contract price, for rock removal. In an addendum to the arbitration decision, the arbitrator explained that this money was due Wave Tec because the construction contract provided for additional money to be paid in cases of "unforeseen circumstances."

Peacock refused to accept this arbitration award. He filed a petition to "Modify, Correct or Vacate Arbitration Award and Petition for Declaratory Judgment" in the trial court. The trial court confirmed the award and ordered that Peacock pay attorney's fees for the declaratory judgment portion of his suit. We now consider his three issues on appeal.

## II. Arbitration Awards— the Legal Standard

Texas public policy strongly favors the submission of disputes to arbitration. *In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 566 (Tex.App.-Waco 2000, no pet.). Judicial review of arbitration awards is very deferential. *Prudential Secs., Inc. v. Shoemaker,* 981 S.W.2d 791, 793 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The reviewing court resolves all doubts in favor of the arbitrator when reviewing whether the award falls within the scope of the arbitrator's authority. *Id.* Arbitration awards are favored by the

courts to dispose of pending disputes, and therefore every reasonable presumption will be indulged to uphold the arbitration proceeding. *J.J. Gregory Gourmet Servs. v. Antone's Import Co.,* 927 S.W.2d 31, 33 (Tex.App.-Houston [1st Dist.] 1995, no writ).

But no matter how much arbitration is to be favored by the courts, or how deferential our review of arbitration awards is to be, arbitration agreements are still creatures of contract and must be analyzed as such. In resolving disputes regarding the interpretation of arbitration agreements, standard contract construction principles are used. *Leander Cut Stone Co. v. Brazos Masonry, Inc.,* 987 S.W.2d 638, 640 (Tex.App.-Waco 1999, no pet.). The plain meaning of the contractual language should be looked at in order to ascertain the intent of the parties. *Id.* We will use these principles in our analysis.

Under Texas law, arbitrations may be conducted in accordance with the common law or chapter 171 of the Civil Practice and Remedies Code. *See Riha v. Smulcer,* 843 S.W.2d 289, 292 (Tex.App.-Houston [14th Dist.] 1992, writ denied); TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon Supp.2002). The trial court concluded that, in this case, the arbitration did not fall under chapter 171, but rather, was controlled by common law principles. The parties do not dispute this. Under the common law, if an award is "within the authority conferred on the arbitrators in the agreement, the award will not be set aside except for fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment." *Smith v. Barnett,* 373 S.W.2d 762, 765 (Tex.Civ.App.-Dallas 1963, no writ).

### III. Validity of Arbitration Award

In his first issue, Peacock complains that the trial court erred in refusing to vacate the arbitration award. First, he argues that the arbitration award is void because of its lack of finality. Second, Peacock complains that the arbitration award is void because it goes beyond the scope of the arbitration agreement. We must consider the impact of the term "void."

### a. Void versus voidable

An arbitration award is in the nature of a judgment. *Hooker v. Williamson,* 60 Tex. 524, 1883 WL 3509, at *1 (Tex.1883). Therefore, we must be careful of labels such as "void" and "voidable" because they are terms that have specific meaning as regards judgments. A void judgment is an absolute nullity and has no legal force or effect, while a voidable judgment is capable of being voided or confirmed. *See In re Sensitive Care, Inc.,* 28 S.W.3d 35, 39 (Tex.App.-Ft. Worth 2000, no pet.); *Easterline v. Bean,* 121 Tex. 327, 49 S.W.2d 427, 429 (1932). A judgment is void when the court had no jurisdiction to issue it. *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985). Other defects merely render the judgment voidable. *Id.* These concepts can be applied to the issues before us.

### b. Finality of the Award

Peacock contends that the fact that the arbitrator ordered Wave Tec to repair the pool, rather than pay Peacock for repairs, creates an award that is not final because it requires further action on the part of Wave Tec. Indeed, the arbitrator labeled the award "interim," established the procedure to be followed, and retained the authority to engage an expert to inspect the repairs if Peacock did not approve them. Peacock argues that this lack of finality renders the award void. As we understand Peacock's argument, it is that, because the arbitration award is not final, the trial court does not have jurisdic-

tion to confirm it. If the trial court did not have jurisdiction to confirm the award, the judgment would, in fact, be void. Thus, we must determine whether the arbitration award here is final—and therefore subject to confirmation—even though it orders Wave Tec to repair the pool.

 Texas case law requires that an "award must determine all matters submitted or it will be unenforceable for lack of finality." *Porter v. Irvine,* 658 S.W.2d 711, 713–14 (Tex.App.-Houston [1st Dist.] 1983, no writ) (citing *Smith v. Barnett,* 373 S.W.2d 762, 765 (Tex.Civ.App.-Dallas 1963, no writ)). Further, while the award may not "reserve judicial authority to be exercised in the future, … under certain circumstances [the arbitrator] may reserve a ministerial authority to be thereafter exercised without vitiating the award." *Hooker,* 60 Tex. 524, 1883 WL 3509, at *2.

In this case, the BBB Rules of Binding Arbitration, which were incorporated into the Agreement to Arbitrate and controlled the proceeding, allow for an arbitrator to render either a "final or an interim decision." An interim decision is appropriate when the "decision requires some action to be taken. If the arbitrator renders an interim decision, the arbitrator maintains continuing authority over the execution of the decision in accordance with the specific terms set out in the decision." Here, the dispute concerned the defectiveness and substandard workmanship of Peacock's pool. The award was repair of the pool with Peacock's approval. If Peacock did not approve, the arbitrator reserved the authority to engage an expert to inspect the repairs. This award determines all matters that were in dispute between the parties regarding construction of the pool, and which were submitted for resolution under the terms of the Agreement to Arbitrate. In addition, the authority the arbitrator reserved, that of engaging an expert

to inspect the repairs if Peacock did not approve of those repairs, was ministerial in nature, not judicial. We hold that this arbitration award does not lack finality.

 We note, however, that there is a distinction between the finality of an arbitration award and the finality of a judgment confirming such an award. For instance, the res judicata effect of a judgment confirming an award that contemplates future acts, would not reach those future acts. In this instance, we will not comment on the prospective portions of the arbitration award because the propriety of the award as it may impact or be impacted by future events would be advisory. We cannot render advisory opinions. *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 223 (Tex.2002) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993)).

*c. Scope of the Award*

Second, Peacock complains that the arbitration award is void and should be vacated because it goes beyond the scope of the arbitration agreement. He contends that the award exceeds the scope of the agreement because 1) specific performance was awarded rather than the monetary damages that he requested, and 2) Wave Tec was awarded additional money for rock removal, which was not included in the Agreement to Arbitrate. Wave Tec points to the original construction contract signed by the parties as the source that allows the arbitrator to award it money for services rendered under "unforeseen circumstances." We must consider an arbitrator's scope of authority and its subsequent effect on the validity of an arbitration award.

To begin, we must determine what defines the scope of the arbitration agreement. The trial court concluded as a matter of law that the construction contract

signed by the parties contains a binding common law agreement to arbitrate. The trial court further concluded that the scope of the arbitration award and the scope of the arbitrator's authority, in this case, are defined by the "contract." The trial court appears to conclude that this "contract" is the original construction contract, incorporated into the parties' Agreement to Arbitrate. In support of this, Wave Tec relies upon *Thomas v. Prudential Securities, Inc.,* 921 S.W.2d 847 (Tex.App.-Austin 1996, no writ). In *Thomas,* the court considered whether an arbitration panel was acting within its scope of authority when it awarded attorney and expert witness fees. *Id.* at 848–49. In order to determine the scope of the arbitrator's authority, the court looked at the "intent of the parties as expressed through the contract containing the arbitration clause and the submission agreement." *Id.* at 849. The submission agreement in that case would be equivalent to the Agreement to Arbitrate in the case before us. The court of appeals in *Thomas* emphasized that when the parties submit an issue to an arbitrator, the court should look additionally to the "scope of the submissions as a reflection of the parties' intent." *Id.* The court concluded that the award in that case was within the scope of the arbitrator's authority because the arbitration submission agreement between the parties incorporated the New York Stock Exchange rules, which allowed the award of such fees, and because both parties had submitted claims for attorney's fees. The court rejected the appellant's argument that the lack of a provision providing for the award of attorney or expert witness fees in the parties' original contract controlled the case. Rather than standing for the proposition that the scope of an arbitrator's authority is defined by the arbitration clause in the original contract, as Wave Tec urges, *Thomas* supports the proposition that the agreement

to arbitrate, or submission agreement as it is termed in *Thomas,* shapes the scope of the arbitrator's authority.

Similarly, in this case, by looking at the plain meaning of the language in the Agreement to Arbitrate, we see that the Agreement explicitly incorporates the BBB rules of arbitration. The BBB rules specifically delineate the arbitrator's authority as "limited to the scope of the *Agreement to Arbitrate.*" (Emphasis in original). And the Agreement to Arbitrate specifically sets forth the nature of the dispute as the allegedly substandard workmanship of the pool. The only mention of the original construction contract in the Agreement to Arbitrate is Wave Tec's contention that the "pool has been installed within specifications and according to contract between consumer and business." We hold that, in this case, the scope of the arbitrator's authority, and, therefore, the scope of the award, is defined by the Agreement to Arbitrate. We now look to see if (a) the ordered repair of the pool and (b) the payment for rock removal, fall within the scope of the arbitrator's authority as defined by the Agreement to Arbitrate.

In the Agreement to Arbitrate, Peacock specifies that he wants a "new pool, or reimbursement of amounts paid, payment by Wave Tec of amount necessary to complete and repair pool." Texas case law tells us that "in the absence of clearly restrictive language, great latitude must be allowed in fashioning the appropriate remedy constituting the arbitrator's 'decision.'" *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.,* 927 S.W.2d 31, 35 (Tex.App.-Houston [1st Dist.] 1995, no writ) (citation omitted). Peacock argues that repairs should not have been awarded in this case because specific performance is disfavored by courts and "will never be granted where a complete, speedy, and

adequate remedy at law is available." He cites to extensive case law to bolster this contention. Peacock fails to realize that the distinction is that the arbitration to which he submitted was not in a court of law.

In this case, the BBB rules specify that repairs can be ordered as part of an award. And, in a transcript of the arbitration meeting that was attached to the trial court's judgment, the arbitrator made clear to Peacock the effect of the word "repair" in Peacock's "Decision sought." Peacock was offered an opportunity to amend his statement of the "Decision sought." The arbitrator stated to Peacock that the arbitrator could order "a repair under whatever conditions I set forth ... if you leave the repair in there." Peacock chose to leave "repair" in his "Decision sought." We conclude that ordering Wave Tec to repair the pool at its own expense is within the scope of this Agreement to Arbitrate.

■■■ However, as previously stated, the dispute being decided under the Agreement to Arbitrate was Peacock's allegation that the pool installed at his home is defective and the workmanship substandard. Wave Tec argues that the language "according to contract between consumer and business" is sufficient to incorporate its claim for additional compensation for rock removal into the arbitration. We disagree. Accordingly, because the arbitrator's authority is limited to the scope of the Agreement to Arbitrate, and, because Wave Tec did not contend the decision sought was incomplete because it did not seek additional payment for rock removal allegedly owed by Peacock under "Business wants" on the agreement, the arbitrator's award for rock removal did exceed the scope of the Agreement to Arbitrate.

■■■ The Texas Supreme Court tells us that "when arbitrators attempt to determine matters not submitted to their determination, as to such matters the award is void." *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 327 S.W.2d 406, 408 (1959). But, that is not to say that if part of the award exceeds the authority of the arbitrator the entire award is void. "[T]he award will not be set aside if the excess may be disregarded and a valid award left standing, or if the excess may be regarded as mere surplusage." *Smith v. Barnett,* 373 S.W.2d 762, 765 (Tex.Civ.App.-Dallas 1963, no writ) (citing *Guidry,* 160 Tex. 139, 327 S.W.2d 406). We therefore sustain part of Peacock's first issue and vacate that portion of the arbitrator's award ordering Peacock to pay additional money for rock removal.

IV. Misconduct by Arbitrator

■■■ In his second issue, Peacock argues that the trial court applied the wrong standard of review in deciding whether to vacate the arbitration award. In a letter to counsel sent after the hearing, the trial court wrote that it was limited to "active bad faith" in considering whether to vacate the common law arbitration award. But, in its amended findings of fact and conclusions of law, the trial court addressed several common law grounds for vacation of arbitration awards. Included in these is "misconduct," the ground asserted by Peacock as requiring this award be vacated. The trial court concluded as a matter of law that there was no evidence of misconduct. We review the trial court's conclusions of law de novo as legal questions. *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). But even an incorrect conclusion of law will not prevent affirmance of the judgment if the controlling findings of fact support a legal theory on which the judgment is correct. *Id.*

■ Peacock asserts that the arbitrator solicited advice from technical experts without including the parties. He argues that this testimony influenced the arbitrator in his award of specific performance and therefore deprived the parties of a fair hearing. In a document titled "Reasons for Decision," which is dated the same as the arbitrator's decision, the arbitrator explains that:

I have spoken to two individuals with considerable experience in building pools—one of whom specializes in constructing vinyl-lined pools. Both tell me these pockets, waves and bumps are evidence that the Pool–Krete foundation is too thin and too uneven to provide an adequate base for the liner. They also tell me that the presence of sharp particles which can be felt through the liner indicate that the foundation has not been adequately "stoned" to remove fine particles of rock. Failure to provide a smooth foundation will cause the liner to wear excessively. The presence of sharp particles greatly increase the risk of puncturing the liner.

The BBB rules comment on such "technical experts." The rules state that if such an impartial technical expert is used by the arbitrator before the decision is made, the parties "will have an opportunity to evaluate and comment on the qualifications and findings of the expert." Wave Tec fallaciously argues to this Court that the BBB rules specifically allow such *ex parte* testimony from an impartial expert. Wave Tec points to a provision in the BBB rules that concerns the use of impartial technical experts after an interim decision has been made. This provision contemplates the use of impartial technical experts to decide whether the action ordered in the interim decision was not performed or was performed unsatisfactorily. This is not the case before us. The technical experts relied upon by the arbitrator did provide input into the decision made by the arbitrator. The question remains whether this variance from the BBB rules constitutes misconduct of the arbitrator such as would require vacation of the arbitration award.

Texas courts have held that to "constitute 'misconduct' justifying vacation of an arbitration award under Texas common law, an act must so affect the rights of a party as to deprive it of a fair hearing." *IPCO–G.&C. v. A.B. Chance Co.*, 65 S.W.3d 252, 258 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (citing *Mullinax, Wells, Baab & Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex.App.-Dallas 1985, writ ref'd n.r.e.)). The courts have further held that receiving *ex parte* affidavit testimony, or having *ex parte* contact with counsel does not constitute misconduct justifying the vacation of an arbitration award. *Id.*

The evidence considered here by the arbitrator favored Peacock because it supports the premise that the pool was defective and the workmanship substandard. There is nothing in the record to indicate that the evidence went to whether Wave Tec should be assigned the repairs. This is the issue that Peacock disputes, not whether the pool is defective and not whether the pool is capable of repair. Indeed, part of Peacock's decision sought in the Agreement to Arbitrate is the "amount necessary to complete and repair [the] pool." We hold that the use of the technical experts did not so affect the rights of the parties as to deprive them of a fair hearing and therefore was not "misconduct" by the arbitrator.

## V. Motion for New Trial

■ In his third issue, Peacock complains that the trial court abused its discretion in denying a motion for new trial on the basis of newly-discovered evi-

dence. A party seeking a new trial on the ground of newly-discovered evidence must show the trial court that: 1) the evidence has come to his knowledge since the trial; 2) it was not owing to the want of due diligence that it did not come sooner; 3) it is not cumulative; and 4) it is so material that it would probably produce a different result if a new trial were granted. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 621 (Tex.App.-Waco 2000, pet. denied). Further, in considering whether the trial court abused its discretion, the inquiry on appeal is not whether it might have been proper for the trial court to grant the new trial, but rather, whether the refusal to do so has violated a clear legal right or is a manifest abuse of judicial discretion. *Id.*

■ Peacock asserts that the two newly-discovered facts that 1) Wave Tec was not a member of the BBB during the trial court's hearing, and that 2) Wave Tec moved its corporate offices to another county, require a new trial. Peacock argued in his motion for new trial that if the trial court had known that neither the trial court, nor the BBB has any jurisdiction or authority to require Wave Tec to comply with the specific performance as ordered in the arbitration award, the trial court would have refused to allow the award to stand. The trial court did not agree. Further, the record contains a letter from the BBB explaining that Wave Tec's obligation to the BBB for dispute resolution regarding this matter continues despite the fact that Wave Tec is no longer a member. We hold that the trial court did not abuse its discretion in denying Peacock's request for a new trial because the newly-discovered evidence was not so material as to probably produce a different result in a new trial.

## VI. Conclusion

In sum, because we conclude that an award of additional money to be paid for rock removal was outside the scope of the Agreement to Arbitrate, we reverse the trial court's judgment in part and render judgment that that portion of the arbitration award be vacated. As otherwise described herein, judgment confirming the arbitration award is affirmed.

## OPINION DENYING MOTION
## FOR REHEARING

■ Wave Tec, in a motion for rehearing, asserts that our earlier opinion and judgment, which reformed the trial court's judgment by eliminating an award to Wave Tec of over $10,500 for rock removal as beyond the scope of the Agreement to Arbitrate, was wrong. We disagree. Our earlier opinion was based on the fact that the issue of additional monetary payments due under the original construction contract is not found in the plain language of the Agreement to Arbitrate that was signed and initialed by all the parties. We write this opinion to elaborate on the process through which the scope of the issues to be decided by the arbitrator was agreed upon.

■ The standard of review we use in considering a trial court's confirmation of an arbitration award is de novo. *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir.1994); *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 320 (Tex.App.-Dallas 1999, no pet.).

In this motion for rehearing, Wave Tec contends that the Agreement to Arbitrate refers to the construction contract, which includes a provision for additional payment for "rock removal." Furthermore, as Wave Tec points out, prior to signing the Agreement to Arbitrate at the actual arbitration, it sent the Better Business Bureau (which was preparing the Agreement and whose rules of arbitration control under the Agreement) a fax setting forth what it

wanted to be included under the Agreement's heading: "What the Business Wants." The fax states in part: "payment for rock removal incurred during excavation." Wave Tec also relies on the fact that the Peacocks objected to the BBB after the arbitration hearing that rock removal was not within the scope of the Agreement, and the BBB rejected that contention, relying on specific language in the Agreement.

The language in the Agreement that is argued by Wave Tec and the BBB to impart the authority upon the arbitrator to award additional monies to the business involved is: "that [the] pool has been installed within specifications and according to [the] contract between consumer and business." This language is under the caption "Nature of Dispute" in the Agreement.

The Agreement expressly provides: "The arbitrator's decision will be made in accordance with the applicable Rules of Arbitration, and may not exceed what is set out in the 'Decision Sought' section of the Agreement." The "Decision Sought" section states: "New Pool, or reimbursement of amounts paid, payment by Wave Tec of amount necessary to complete & repair pool." Rock removal is not mentioned. Payment to Wave Tec for rock removal is not mentioned. In fact, payment to Wave Tec for anything is not mentioned. Nor is the contract for construction of the pool mentioned in this section of the Agreement. As noted in our original opinion, the BBB rules that the parties specifically agreed to abide by, limited the arbitrator's authority to the "scope of the *Agreement to Arbitrate.*"

Both the Peacocks and Wave Tec agreed to the language in the Agreement. The Peacocks, their attorney, and two representatives of Wave Tec signed the Agreement. In fact, the parties altered the "Decision Sought" section of the Agreement on the day of the arbitration, and the Peacocks and the same two Wave Tec representatives, including Wave Tec's president, initialed the change.

We do not comment on whether payment for rock removal could have been arbitrated: that issue is not before us. But the record—the Agreement itself (which neither party contends is ambiguous), the BBB rules, and the parties' signatures and initials—shows that the parties never agreed to arbitrate the question of payment for rock removal. While the fax from Wave Tec to the BBB shows that Wave Tec considered raising the issue, it simply was not part of the final Agreement. Under these circumstances, there is no room for confusion: the scope of the arbitrator's decision could not extend to payment of additional monies for rock removal.

Finally, we find the federal case, *Executone Information Systems, Inc. v. Davis,* instructive in response to Wave Tec's argument that the fax should be considered in determining the scope of the arbitrator's authority. *Executone,* 26 F.3d 1314 (5th Cir.1994). In determining whether a particular issue was submitted to the arbitrator, the *Executone* court concluded that the cross-appellant's reliance on the correspondence between the parties and the arbitrator to define the scope of the arbitration was misplaced. *Id.* at 1323. The court determined that what defined the scope of the arbitrator's authority was the unchallenged letter from the arbitrator to the parties listing the issues to be submitted. *Id.* It was the plain language in this letter that the court concluded was broad enough to give the arbitrator the authority to make its award, not prior communications to the arbitrator from the parties. In the case before us, the language in the Agreement to Arbitrate is simply not

broad enough to include payment for rock removal and prior correspondence to the BBB, or statements by the BBB after the arbitration award was challenged, may not be used to expand the arbitrator's authority.

Accordingly, Wave Tec's motion for rehearing is denied.