

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-370-CV

BURK COLLINS, FOUNTAIN MALL,                    APPELLANTS
INC., AND MALL GROUP, LTD.

V.

TEX MALL, L.P. AND MICHAEL                       APPELLEES
KEST, INDIVIDUALLY

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

This is an arbitration case. The primary issue before us is whether a trial court may review and confirm a "partial final" arbitration award that does not dispose of all matters submitted to arbitration or a separate independent claim of the parties. We hold, as a matter of first impression, that it may not. We, therefore, reverse and vacate the trial court's orders and remand the case for further proceedings.

## I. Background

Burk Collins and Michael Kest formed several partnerships for acquiring, developing, and operating shopping centers and malls in north Texas. Among these partnerships was North Hills Creek Mall, LP ("NHCM"), formed for the sole purpose of owning the North Hills Mall property and operating the mall ("Mall"). Two Collins-related entities were involved in NHCM: Fountain Mall, Inc., which served as NHCM's general partner; and Mall Group, Ltd., a limited partner. Collectively, Collins-related entities ultimately owned 50% of NHCM. The NHCM partnership agreement contained a mandatory arbitration clause, requiring the parties to submit "all disputes between and among them" to the American Arbitration Association in Los Angeles County, California.

When NHCM bought the Mall in 1999, it assumed an $8 million loan. The lender threatened to foreclose on the Mall in early 2003. To forestall foreclosure, Kest agreed to pay $1 million on the existing note. Collins prepared a memorandum of understanding ("MOU") memorializing this agreement, which also included, among other provisions, the following paragraph:

> 5.  In the event Michael Kest or any of his entities purchase the Mall note or purchase the property at foreclosure then Burk Collins will retain all of his ownership in the Mall property . . . under the new entity.

2

Kest wrote the word "NO" next to this paragraph on Collins's MOU and sent Collins a different MOU that did not contain language about Collins retaining an interest in the Mall if Kest bought it at foreclosure.

Kest's MOU contained an arbitration clause, which provided that "[a]ny controversy or claim arising out of or relating to this MOU or the breach hereof . . . shall be settled by binding arbitration in Los Angeles, California." Kest's MOU also contained an integration clause, declaring that "[t]his MOU contains the Parties' entire agreement and understanding . . . and supersedes and replaces all prior and contemporaneous negotiations, all proposed agreements[,] and all agreements, written and oral, regarding the claims, the Note[,] and the Mall."

Collins signed Kest's MOU, but in a separate memorandum he sent to Kest with the signed MOU, he wrote that his acceptance of the MOU was conditioned on Kest's agreement to "give [him] back [his] 50%" interest in the Mall after foreclosure:

> I want an understanding that we have an agreement that if . . . you decide to foreclose or acquire the Mall property off the Courthouse steps that you will give me back my 50% interest after foreclosure. This Memo is a condition to my signature on the [MOU]. If you do not agree then the document is null and void.
>
> If I do not hear back from you then I will consider that we have an agreement.

The parties avoided foreclosure in the first half of 2003, but the lender reposted the Mall for foreclosure in October 2003. Tex Mall, L.P.—an entity formed shortly beforehand by Kest—bought the Mall at a public foreclosure sale. Kest did not give Collins an interest in the Mall property or in Tex Mall.

Some months after the foreclosure, Kest and several Kest-related entities sued Collins and several Collins-related entities, alleging that Collins had retained about $450,000 in sale proceeds for himself. At Kest's request, the trial court issued an injunction compelling Collins to deposit the money in the registry of the court. The trial court also compelled the parties to arbitrate their dispute, citing the arbitration clauses in both the NHCM partnership agreement and in the MOU, and the parties began an arbitration proceeding in California. Tex Mall was not a party to the lawsuit or the arbitration at that time.

In June 2004, two of the Collins parties filed a third-party petition against Michael Kest and Tex Mall, claiming a 50% interest in the Mall or in Tex Mall under the MOU. The Collins parties also filed a notice of lis pendens against the Mall property.

When the Kest parties became aware of the lis pendens in April 2005, they filed a motion to void it. The Collins parties responded, in part, by asking that this issue be referred to the pending arbitration. The trial court agreed with the Kest parties and issued an order voiding the lis pendens.

4

The Collins parties filed a petition for writ of mandamus in this court, challenging the trial court's order striking their lis pendens. We conditionally granted a writ of mandamus directing the trial court to vacate its order, holding that the evidence before the trial court raised a fact issue on the question of whether the Collins parties had a direct interest in the Mall property that must be resolved by the fact finder.[1]

Back in the trial court, the Kest parties filed a motion for summary judgment, seeking a ruling that the Collins parties had no direct interest in the Mall property. They also asked the trial court to void the lis pendens in accordance with the procedure this court explained in the mandamus opinion.[2] The Collins parties again requested that these issues be referred to the pending arbitration. The trial court agreed with the Collins parties and issued an order compelling arbitration of the issues raised in the summary judgment motion.[3]

---

[1] *In re Collins*, 172 S.W.3d 287, 297 (Tex. App.—Fort Worth 2005, orig. proceeding).

[2] *See id.* at 294–95.

[3] Apparently, the trial court misunderstood our instructions in *In re Collins*. We held that the fact issue on the question of whether the Collins parties have a direct interest in the Mall property must be resolved by the "factfinder." *Id.* at 295–98. Because this question was initially submitted to the trial court for determination, we anticipated that the parties would seek resolution of the fact issue in the trial court; we did not contemplate that the trial court would submit the question that we had decided to the arbitration panel for reconsideration. While we appreciate the trial court's reasons for

The Kest parties refiled their motion for summary judgment in the arbitration proceeding. Seven months later, the arbitrators issued their "Ninth Preliminary and Interim Order," in which, contrary to our prior opinion in *In re Collins*, they determined that the Collins parties had failed to raise a material fact issue to show a direct interest in the Mall property and that the lis pendens was null and void. The arbitrators later embodied their rulings in a June 13, 2007, order labeled "Partial Final Award."

The Kest parties then moved the trial court to confirm the partial award and cancel the lis pendens. The Collins parties filed a response urging the trial court to review the arbitration award for errors of law, but they did not file a motion to vacate the partial award. The trial court granted the Kest parties' motion to confirm and on July 31, 2007, granted the Kest parties' motion to sever the Collins parties' "claim for a direct interest in the Mall property" from the remainder of the suit. The Collins parties filed this appeal.

## II.  Issues

In three issues, the Collins parties argue that the trial court erred by refusing to review errors of law committed by the arbitration panel and

---

taking this action, it has resulted in delay, conflicting rulings, and a waste of resources that may have been avoided had the trial court correctly followed our opinion in *In re Collins*.

confirming an award that conflicts with our decision in the mandamus proceeding, improperly confirming a partial award that does not dispose of all issues submitted to arbitration, and severing the Collins parties' lis pendens claim.

## III. Discussion

### A. Choice of Law: Texas or California?

A threshold question in this case is what jurisdiction's arbitration law applies. The Collins parties argue that the Texas General Arbitration Act ("TAA") applies.[4] The Kest parties argue that the California Arbitration Act ("CAA") applies.[5] The Collins parties contend that the Kest parties waived application of the CAA by failing to request the trial court to take judicial notice of California law. We agree.

Under rule of evidence 202, a party may compel a trial court to take judicial notice of another state's law by filing a motion, giving notice to the other parties, and furnishing the court with sufficient information to enable it to properly comply with the request.[6] But "[w]hen a party fails to request

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001–.098 (Vernon 2005).

[5] *See* Cal. Code Civ. Proc. §§ 1280–1294.2 (West 2007).

[6] Tex. R. Evid. 202.

judicial notice of the law of another state as permitted under Rule 202, 'Texas courts will simply presume that the law of the other state is identical to Texas law.'"[7] A preliminary motion is necessary to assure the application of the law of another jurisdiction, and absent a motion by a party, Texas law may be applied to a dispute.[8]

The Kest parties contend that they did request the trial court to take judicial notice of the CAA, pointing to their December 2005 "Motion to Take Judicial Notice of the California Arbitration Act," which they filed before the trial court sent the Collins parties' counterclaims to arbitration. But the motion requested that the trial court take judicial notice of just one section of the CAA—section 1281, which pertains to the validity and enforcement of contractual arbitration clauses, not to the scope of judicial review of arbitration awards.[9] The Kest parties did not move the trial court to take judicial notice of

---

[7] *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 695 (Tex. 2006) (Brister, J., dissenting) (quoting Olin Guy Wellborn III, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 St. Mary's L.J. 1, 27 (1987)); *see also Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290 (Tex. App.—Fort Worth 2007, pet. withdrawn).

[8] *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 919–20 (Tex. 1993); *Gunderson, Inc.*, 235 S.W.3d at 290; *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied).

[9] *See* Cal. Code. Civ. Proc. §§ 1281–1281.96.

the sections of the CAA dealing with judicial review and enforcement of arbitration awards, nor did they attach those sections to their motion.[10]

Because the Kest parties did not request the trial court to take judicial notice of the relevant provisions of the CAA, we will presume that California law is the same as Texas law with regard to judicial review and enforcement of arbitration awards and apply the TAA to this appeal.[11]

## B.    "Partial Final Award"

In their second issue, the Collins parties argue that the trial court erred by confirming the arbitration panel's "Partial Final Award" because the award did not dispose of all issues before the arbitration panel.  They contend that, because the award did not determine all matters submitted to the arbitration panel as Texas case law requires,[12] the trial court had no authority under the TAA to confirm it.  In response, the Kest parties contend that Texas case law does not prohibit the confirmation of a partial award and that the TAA

---

[10] *See id.* §§ 1285–1287.6.

[11] *See* Tex. R. Evid. 202; *Harmar Bottling Co.*, 218 S.W.3d at 695 (Brister, J., dissenting); *De La Lastra*, 852 S.W.2d at 919–20; *Gunderson, Inc.*, 235 S.W.3d at 290; *Pittsburgh Corning Corp.*, 1 S.W.3d at 769.

[12] *See, e.g., Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 637 (Tex. App.—Waco 2003, no pet.); *Porter v. Irvine*, 658 S.W.2d 711, 713–14 (Tex. App.—Houston [1st Dist.] 1983, no writ); *Smith v. Barnett*, 373 S.W.2d 762, 765 (Tex. Civ. App.—Dallas 1963, no writ).

specifically authorizes the confirmation of a partial award in section 171.086(b)(6), because it permits parties to file an application for a court order confirming an award "during the period an arbitration is pending."[13]

## 1. Texas Common Law and the TAA

The common law and the TAA coexist as a dual system of arbitration, and the TAA is "cumulative" of the common law.[14] Courts presume that the legislature enacts statutes with full knowledge of, and reference to, the existing common law.[15] The statutory provision controls and preempts the common law only when a statute directly conflicts with a common law principle.[16]

Texas case law generally recognizes that an essential prerequisite to the trial court's power to review an arbitral award is that the arbitrator's decision be final, not interlocutory. "An arbitration award must determine all matters submitted or it will be unenforceable for lack of finality."[17] Like a final

---

[13] Tex. Civ. Prac. & Rem. Code Ann. § 171.086(b)(6).

[14] *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977); *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth, 2006, no pet).

[15] *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677 (Tex. 2007) (orig. proceeding).

[16] *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000).

[17] *Porter*, 658 S.W.2d at 713–14; *see also Peacock*, 107 S.W.3d at 637; *Smith*, 373 S.W.2d at 765.

10

judgment, an arbitral award should be "conclusive on the parties as to all matters of fact and law."[18]  The award may not "reserve judicial authority to be exercised in the future."[19]

The TAA does not specifically address finality of an arbitration award.[20] We presume that the legislature had full knowledge of the common law principle of finality when it enacted the TAA, and, in the absence of conflicting language, that it intended the act be construed in a manner consistent with that principle.[21]  The Kest parties assert, however, that the act contemplates judicial review of *partial* awards in section 171.086(b), which provides in pertinent part:

> During the period an arbitration is pending before the arbitrators or at or after the conclusion of the arbitration, a party may file an application for a court order, including an order:
>
> . . . .

---

[18] *Pheng Invs.,* 196 S.W.3d at 328; *see Quinn v. Nafta Traders, Inc.*, 257 S.W.3d 795, 798 (Tex. App.—Dallas 2008, pet. granted).

[19] *Peacock*, 107 S.W.3d at 637.

[20] In contrast, the Federal Arbitration Act specifically provides that the lack of finality is grounds for vacating an award.  *See* 9 U.S.C.A. § 10(a)(4) (West 2009) (providing that court may vacate award if it finds "final" award was not made).

[21] *In re Pirelli Tire*, 247 S.W.3d at 677; *see Bennett,* 35 S.W.3d at 16.

11

(6) to obtain relief under *Section 171.087*, 171.088, 171.089, or 171.091.[22]

Section 171.087 states that unless grounds are offered for vacating, modifying, or correcting an award, the court, on application of a party, "shall confirm the award."[23]

### 2. Rules of Statutory Construction

In construing a statute, our objective is to determine and give effect to the legislature's intent.[24] If a statute's language is unambiguous, we generally interpret the statute according to its plain meaning.[25] We begin by examining the exact wording and apply the tenet that the legislature chooses its words carefully and means what it says.[26] We determine legislative intent from the entire act and not just isolated portions.[27] In determining the meaning of a

---

[22] Tex. Civ. Prac. & Rem. Code Ann. § 171.086(b)(6) (emphasis added).

[23] *Id.* § 171.087.

[24] *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *Benish v. Grottie,* 281 S.W.3d 184, 192–93 (Tex. App.—Fort Worth 2009, pet. filed).

[25] *Benish*, 281 S.W.3d at 192–93.

[26] *See In re M.N.*, 262 S.W.3d at 802; *Benish*, 281 S.W.3d at 192–93.

[27] *Benish*, 281 S.W.3d at 192–93.

statute, we must consider the entire act, its nature and object, and the consequences that would follow from each construction.[28]

### 3.    Section 171.086(b)(6) of the TAA

Applying these rules of statutory construction to section 171.086(b)(6), we find no language in that section, or any other part of the TAA, that specifically authorizes a trial court to confirm a partial award, or an award that does not resolve all matters submitted to arbitration.  While section 171.086(b) may contain language that permits a party to "file an application for a court order" confirming a partial award (in addition to other forms of relief) while the arbitration is pending, that language is purely procedural and does not grant the trial court the power to conduct judicial review of partial awards before the arbitrator's decision becomes final.[29]  The mere fact that the legislature chose

---

[28] *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991); *see generally* Tex. Gov't Code Ann. §§ 311.001–.034 (Vernon 2005 & Supp. 2008) (Code Construction Act setting forth presumptions and matters to be considered in construing statute).

[29] The American Arbitration Association (AAA) commercial arbitration rules provide that "*[i]n addition to a final award*, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards."  Am. Arbitration Ass'n Commercial Arbitration Rules & Mediation Procedures R-43(b) (2009) (emphasis added), http://www.adr.org/sp.asp?id = 22440#R43.  Thus, according to the AAA's own rules and procedures, a distinction is made between interim, interlocutory, or partial awards and "final" awards.  It is *final* awards that are subject to confirmation under the TAA, not interim, interlocutory, or partial awards.  This

13

to allow parties to *apply* for confirmation of a partial award while arbitration is pending does not, in our view, demonstrate a legislative intent to abrogate the existing common law rule that arbitration awards must be final to be legally enforceable and subject to judicial review.

This interpretation of section 171.086(b)(6) is consistent with the purpose of arbitration to provide an efficient, economical system for resolving disputes. Subjecting partial awards to judicial review would require trial courts to hold themselves open as appellate tribunals during on-going arbitration proceedings, resulting only in a waste of time, the interruption of the arbitration proceedings, and delaying tactics in a proceeding that is supposed to produce a speedy decision.[30] The principle of finality avoids this waste and inefficiency and promotes the role of arbitration as an expeditious alternative to traditional litigation.

---

does not mean, however, that arbitrators may not make partial awards, only that a trial court may not confirm partial awards.

[30] *See CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) ("Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes.").

### 4. Judicial Review of Partial Awards that Dispose of a Separate Independent Claim

The Kest parties argue that because the partial award resolves the specific issue of whether the Collins parties have a direct interest in the Mall property, it is, therefore, "final" with respect to this "claim." In determining whether the TAA permits a judicial review of a partial award that disposes of a single claim or cause of action, we will look to federal case law construing the Federal Arbitration Act (FAA) for guidance because of the similarities between the two acts.[31]

Like Texas courts, the federal courts have followed the common law principle that arbitral awards resolve all claims submitted as a prerequisite to judicial review.[32] Some federal circuits, however, have recognized exceptions to this general rule.[33] Those exceptions tend to fall under two broad categories of partial awards: (1) those which finally and definitely dispose of a separate

---

[31] *See Quinn*, 257 S.W.3d at 798.

[32] *See, e.g., Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413–14 (2d Cir. 1980).

[33] *Halliburton Energy Servs., Inc., v. NL Indus.*, 553 F.Supp.2d 733, 774 (S.D. Tex. 2008).

and independent claim,[34] and (2) those that were made pursuant to an agreement of the parties.[35]

There is no agreement between the parties in this case to sever the Collins parties' lis pendens claim from the other issues submitted to arbitration, or to otherwise bifurcate the proceeding.  Thus, the question we must decide is whether the lis pendens claim is a separate claim that would be the proper subject of a lawsuit if asserted independently from the other claims submitted to arbitration, and, if so, whether the TAA permits review and confirmation of an award that resolves such claims.

### 5.    Does the Collins Parties' Lis Pendens "Claim" Constitute a Separate Independent Claim?

In determining whether the Collins parties' lis pendens claim constitutes a separate independent claim for the purpose of determining whether it may be the subject of a "partial final" arbitration award subject to judicial review, we first examine the nature of lis pendens.  The doctrine of lis pendens is codified

[34] *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 233–34 (1st Cir. 2001); *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)*; Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).

[35] *Hart Surgical*, 244 F.3d at 234; *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998); *Mariforum Shipping*, 624 F.2d at 413–14; *Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*, 250 F.Supp.2d 107, 112 (E.D.N.Y. 2003).

16

in Section 12.007(a) of the Texas Property Code, which provides in pertinent part:

> After the plaintiff's statement in an eminent domain proceeding is filed or during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, *a party to the action who is seeking affirmative relief may file* for record with the county clerk of each county where a part of the property is located *a notice that the action is pending*.[36]

Under section 12.008, a party or other person interested in the result of or in the property affected by a proceeding in which the lis pendens has been filed may file a motion to cancel the lis pendens at any time during the proceeding.[37]

Generally speaking, the purpose of lis pendens notice is two fold: (1) to protect the alleged rights of the party filing it to the property that is in dispute in the lawsuit, and (2) to put those interested in the property on notice of the lawsuit.[38] The doctrine of lis pendens does not void a conveyance of the property during pendency of the suit; the interest of the grantor merely passes

---

[36] Tex. Prop. Code Ann. § 12.007(a) (Vernon 2004) (emphasis added).

[37] *Id.* § 12.008; *In re Collins*, 172 S.W.3d at 292–93.

[38] *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *In re Collins*, 172 S.W.3d at 292–93.

subject to it.[39]  The lis pendens notice operates only during pendency of the suit and terminates with the judgment in the absence of appeal.[40]

Considering the nature of lis pendens, the issue of whether the Collins parties' notice of lis pendens was properly filed clearly would not be the proper subject of a separate lawsuit independent of the underlying lawsuit in which the lis pendens has been recorded.  The lis pendens notice is wholly dependent on the filing and pendency of the underlying lawsuit.  Apart from that lawsuit, there would be no lis pendens.

For these reasons, we hold that issue of the Collins parties' right to lis pendens notice does not constitute a separate independent claim.  Therefore, assuming without deciding that the TAA permits judicial review of partial awards that definitely and finally dispose of separate independent claims submitted to arbitration, we hold that the lis pendens claim decided by the arbitration panel does not constitute the type of claim that would render the "Partial Final Award" subject to judicial review under the TAA.  It is the content of the award, not its nomenclature, that determines its finality.

---

[39] *Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex. App.—Texarkana 1992, writ denied).

[40] *Hartel v. Dishman*, 135 Tex. 600, 608–09, 145 S.W.2d 865, 869 (1940).

To summarize, the partial award determining the Collins parties' lis pendens claim is not final and enforceable because it does not dispose of all of the claims submitted to arbitration, or a separate independent claim. Further, neither the TAA or common law authorizes a trial court to confirm a partial award that does not dispose of all claims submitted to arbitration, or a separate independent claim. Therefore, we hold that the trial court erred by granting the June 13, 2007, order confirming the partial award. The Collins parties' second issue is sustained.[41]

**D.    Severance**

In their third issue, the Collins parties argue that the trial court abused its discretion by severing the lis pendens issue. The trial court stated in its July 31, 2007, severance order that it ordered that this "claim" be severed "so that the [June 13, 2007, order confirming the 'Partial Final Award'] with respect to that claim may become final."

Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately."[42]  This rule

---

[41]  Having held that the trial court had no statutory authority to review the partial award, we do not address the Collins parties' first issue complaining of the trial court's refusal to review errors of law in the award. *See* Tex. R. App. P. 47.1.

[42]  Tex. R. Civ. P. 41.

19

grants the trial court broad discretion in the matter of severance and consolidation of causes.[43] The trial court's decision to grant a severance will not be reversed unless it has abused its discretion.[44] A claim is properly severable if (1) the controversy involves more than one cause of action, (2) *the severed claim is one that would be the proper subject of a lawsuit if independently asserted*, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.[45] The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience.[46]

We have held that the trial court had no authority under common or statutory law to grant the June 13, 2007, order confirming the partial award because of its lack of finality, and because the lis pendens claim is not a separate claim that would be the proper subject of a lawsuit if independently asserted. The lis pendens claim is, therefore, not properly severable from the

---

[43] *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

[44] *Id.*

[45] *Id*. (emphasis added).

[46] *Id.*

20

remaining action.[47]  We, therefore, hold that the trial court abused its discretion in severing the Collins parties' lis pendens claim. The Collins parties' third issue is sustained.

## IV.  Conclusion

Having sustained the Collins parties' second and third issues, we reverse and vacate the trial court's June 13, 2007, and July 31, 2007, orders and remand the case for further proceedings.

JOHN CAYCE
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  August 20, 2009

---

[47] *Id.*